(Decided October 7th 1864.)

## BROWNE *vs.* BROWNE ET AL.

NEW TRIAL: VERDICT NOT TO BE IMPEACHED BY JURORS.—In support of a motion for a new trial, it was proposed to prove: 1st. By the affidavits of four jurors who sat in the case, that one of their number, A., was suffering during the progress of the trial, and in the jury room, with a painful disorder of the bowels; 2nd. By the affidavit of A. himself, that he was opposed

Browne *vs.* Browne et al.

to the verdict rendered, but assented to it to obtain his release from the confinement of the jury-room; 3rd. By the affidavits of three other jurors, who also testified as to the sickness of A., that they believed the verdict rendered erroneous, and assented to it for the purpose of relieving A.—HELD:

1st. That it is a well settled rule in Maryland—supported not only by the authority of adjudged cases in England and this country, but by sound reason and public policy, "That the testimony of jurors cannot be heard to impeach their verdict, whether the conduct objected to in the jury be misbehaviour or mistake;"—adopting the decision of Baltimore County Court in the case of *Bosley vs. The Chesapeake Bank*, 3 *G. & J.*, 473, (note.)

2nd. That in announcing this rule, it is not intended to decide that the affidavits of jurors impeaching their verdict, ought in no case to be allowed; for "cases might arise in which it would be impossible to refuse them without violating the plainest principles of justice."

3rd. That the testimony in this case, if admitted, was insufficient to justify the setting aside of the verdict rendered.

ISSUES FROM ORPHANS' COURT, VERDICT ON:—Upon the trial of issues from the Orphans' Court, the jury returned their verdict generally, "for the defendants," who were the *Caveatees*, supporting the will of a testator; but from the character of the issues it was absolutely certain that the jury could not have so found without deciding every issue in favor of the defendants.—HELD:

1st. That the verdict was sufficient.

2nd. That a verdict upon issues from the Orphans' Court must finally determine said issues, and be decisive between the parties.

3rd. "Though the verdict may not conclude formally, or punctually to the words of the issue; yet if the point in issue can be concluded out of the finding, the Court shall work the verdict into form and make it serve."

ISSUES FROM ORPHANS' COURT: JUDGMENT FOR COSTS: PRACTICE.—The entry of a judgment for costs on a verdict determining issues from the Orphans' Court is erroneous. The established practice in such cases, is to certify to the Orphans' Court, the verdict of the jury, and the costs, leaving it for that Court to enter the proper judgment thereon.

APPEAL from the Superior Court of Baltimore City.

This is an appeal by the *caveator*, the plaintiff below, on the trial of issues from the Orphans' Court, from the decision of the Superior Court of Baltimore City, refusing to set aside the verdict of the jury in favor of the defendants and to grant a new trial.

The case is thus stated by BARTOL, J., delivering the opinion of this Court.

This appeal brings before us for review, the ruling of the Superior Court of Baltimore City upon certain motions made by the appellant after trial and verdict. A paper having been exhibited in the Orphans' Court of Baltimore City, as the last will of Martha T. Browne, deceased, Charles C. Browne, the appellant, filed a *caveat* thereto, upon which issues were framed, and sent to the Superior Court for trial. These issues were as follows:

1st. Whether the will of 23rd of May 1862, was executed by said Martha T. Browne when she was of sound and disposing mind, and capable of executing a valid deed or contract.

2nd. Whether it was executed by her under the influence of suggestions or importunities, which her mind from its diseased or enfeebled state, was at the time unable to resist.

3rd. Whether the said supposed will was her free, voluntary act, to which she was induced, with a knowledge of its contents, and without the exercise of a dominion or influence over her by some person or persons, which prevented the exercise of a sound discretion on her part.

4th. Whether the supposed will was procured by undue influence, fraudulent devices, importunities, misrepresentations or deceits practiced on her.

5th. Whether at any time subsequent to the execution of said supposed will, the said Martha T. Browne was desirous of cancelling or altering the same, and was she prevented therefrom by management, fraud or undue influence or importunities.

By the order of the Orphans' Court, it was directed "that in the trial of the above issues in the Superior Court, the above named Charles C. Browne be *plaintiff*, and Mary E. Browne and Dr. Thomas S. Wilson, and Ellen E. M. Wilson, his wife, and Charles J. B. Mitchell be defendants." That is, in the trial before the jury, the

*caveator* was *plaintiff,* and the *caveatees,* or parties maintaining the will were defendants. The jury returned their verdict: *"For the defendants."* Whereupon the plaintiff filed a motion to set aside the verdict, and for a new trial, assigning the following reasons: 1st. Because one of the jurors was compelled to consent to a verdict by sickness and physicial disability. 2nd. Because of misconduct in the jury in the method of forming the verdict. 3rd. Because the verdict was against the evidence. To these was subsequently added the objection: "That the verdict was insufficient and imperfect, informal, defective and not responsive to the issues."

The Court below (MARTIN, J.) overruled said motion and refused to set aside the verdict and grant a new trial; and judgment having been entered upon the verdict, for the defendants for costs, the plaintiff appealed.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*Wm. S. Bryan* and *Robt. J. Brent,* for the appellant, argued:

1st. (a.) That the circumstances occurring in the jury room, render the verdict bad in law. *Hogshead vs. State,* 6 *Humph. Tenn. R.,* 59. *Cochran vs. State,* 7 *Id.,* 544. *La Fayette P. R. Co. vs. New Albany,* &c., 13 *Ind. S. R. People vs. Douglas,* 4 *Cow.,* 26. *Brant vs. Fowler,* 7 *Id.,* 562. *Commonwealth vs. Roby,* 12 *Pick.,* 519. *Gregg vs. McDaniel,* 4 *Harring.,* 367.

(b.) It being not matter of *discretion,* but matter of *law,* that the jury should be discharged where one of their number becomes disabled by sickness, the verdict is a nullity, and would not authorize a judgment. *State vs. Ephraim,* 2 *Dev. & Bat.,* 162, 174. *Ned vs. State,* 7 *Porter,* 187. *Commonwealth vs. Cook,* 6 *Serg. & Rawle,* 587.

(c.) The fact that the jury did not pass on the issues

separately, was a fatal error. *Biggs vs. Barry, Curtis' C. C. R.*, 259.

2nd. That the verdict itself is not a sufficient response to the issues, which the jury were to try. In case of special inquiries, the jury ought to respond in the words of the inquiry or in equivalent terms. 1 *Collinson on Insanity*, 148. *Stearnes vs. Barrett*, 1 *Mason R.*, 172. *Coffin vs. Jones*, 11 *Pick.*, 48. *Gerrish vs. Train*, 3 *Pickering*, 124. *Holman vs. Kingsbury*, 4 *New Hampshire*, 106. *Jewett vs. Davis*, 6 *New Hampshire*, 520. *Patterson vs. U. States*, 2 *Wheat.*, 224. *Fairfax vs. Fairfax*, 5 *Cranch*, 19. *Shelley vs. Alsop, Yelverton*, 77; cited in 1 *Graham & Waterman on New Trials*, 157. *Hampton vs. Watterston*, 14 *La. An. R.*, 239. *Toles vs. Cole*, 11 *Illinois*, 562. *Middleton vs. Quigley*, 7 *Halstead*, (*N. J.*,) 352. *Booth's Exc'rs vs. Armstrong*, 2 *Wash.* (*Va.*) *R.*, 384. *State vs. Carleton*, 1 *Gill*, 249. *King vs. Cockerell, Andrew's R.*, 260.

The jury in the present case did not profess to pass on all the issues, and the omission is fatal. *Hatton vs. McClish*, 6 *Md. Rep.*, 418. 1 *Graham & Waterman on New Trials*, 142.

3rd. That the Court erred in giving judgment against the plaintiffs for costs. 1 *Code, Art.* 93, *sec.* 250. *Van Ness vs. Van Ness*, 6 *How.*, 62.

4th. That all these questions are properly presented for the decision of the Court. The motion for a new trial was made in due time, and although it was in the discretion of the Court to refuse it, yet in the language of the Court of Appeals in the case of *The Union Bank vs. Ridgley*, 1 *H. & G.*, 407, such discretion "is a sound legal discretion, to the proper exercise of which the party claiming it is entitled, and from which he cannot be properly debarred by any rule that is the mere creature of the Court." The Court, by refusing to hear the evidence on which the motion was founded, determined that

it would not exercise its discretion, which was error. *Slade vs. Burton,* 6 *Iredell,* 208. *Freeman vs. Morris, Bus. N. C. R.,* 287. *Stephenson vs. Stephenson,* 4 *Jones N. C. R.,* 472.

Although the Court supposed that it was forbidden by some rule of law to hear the evidence, if this opinion of the Court was erroneous a new trial will be granted. *Reynolds vs. Boyd,* 1 *Ired.* (*N. C.*) *R.,* 106. *Warfield vs. Warfield,* 6 *H. & J.,* 467. *U. S. vs. Chicago,* 7 *How.,* 185; (17 *Curtis,* 82.)

The reason assigned by the Court for refusing to hear the evidence set out in the first exception, is, that the affidavits were made by jurors who tried the case. Upon this question, we rely upon the opinion of Chief Justice TANEY, in *U. S. vs. Reid,* 12 *Howard,* 361, in *Hogshead vs. State,* 6 *Humphreys,* 59, and *Cochran vs. State,* 7 *Humphreys,* 544, the affidavits of jurors were admitted; also, in *Cochran vs. Street,* 1 *Wash.* (*Va.*) *R.,* 79, a case in some respects strikingly like the present. The affidavits are not offered to shew misconduct in the jury, and are strictly within the rule laid down in 1 *Graham & Waterman on New Trials,* ch. 4, sec. 12. They support the verdict as given, and shew the casualty to which it owed its existence. *Bosley vs. The Chesapeake Ins. Co.,* 3 *G. & J.,* 473. (By Balto. Co. Court.) *Bladen's Lessee vs. Cockey,* 1 *H. & McH.,* 230. *Tide Water Can. Co. vs. Archer,* 9 *G. & J.,* 479.

A party has a right to spread on the record facts which occurred after the jury retired to consider their verdict, and if these facts vitiate the verdict, the Court is bound *ex debito justitiæ* so to declare. If the law were otherwise, a jury might be bribed after they had retired, and the injured party would have no redress, except an appeal to the discretion of the Court. In such case, evidently, the verdict is void in law, and judgment on it would be reversed on writ of error. But how can a party obtain

the revision of a higher tribunal, if he is prohibited from putting the facts on the record. The practice is as ancient as the Common Law. 2 *Hale's Pleas of the Crown*, 307, 308. *Metcalfe vs. Deane, Cro. Eliz.*, 189. It was observed in *Lord St. John vs. Abbott, Barnes*, 441, (cited in 1 *Graham & Waterman on New Trials*, 84.) *Earl of Kent's Case*, cited in do., 81. *Vicary vs. Farthing, Cro. Eliz.*, 411. *Brandin vs. Grannis*, 1 *Conn. Rep.*, 401. *Bennett vs. Howard*, 3 *Day (Conn.) R.*, 219. *Talmadge vs. Northrop*, 1 *Root (Conn.,)* 522. In these last three cases, the facts were made the subject of a motion in arrest of judgment, which could not have been the case if they were not properly on the record. *Vide State vs. Tilghman*, 11 *Iredell (N. C.) R.*, 553, where the difference is explained between a new trial which is granted as a matter of discretion, and a *venire de novo* for a mistrial, which is demandable as a matter of law. Also, *State vs. Miller*, 1 *Dev. & Bat.*, 500. The practice is sanctioned in *Ford vs. State*, 12 *Md. Rep.*, 514.

In the fifth exception, the motion was as analogous to a motion in arrest of judgment, as the nature of the proceedings would permit. This undoubtedly presents a naked question of law without any admixture of discretion.

As to the judgment for costs rendered by the Court:— Both the first and third motions are to some extent analogous to a motion in arrest of judgment, and therefore present this question to the Appellate Court. *Morgan vs. Briscoe*, 4 *Md. Rep.*, 271.

The proceeding in the Superior Court being only interlocutory as shown in *Van Ness vs. Van Ness*, 6 *How.*, 62, no judgment for costs could be entered, but only the amount certified to Orphans' Court where the judgment is to be entered.

This Court will ascertain the facts from the affidavits in accordance with the motion in the 4th exception.

*Montgomery vs. Murphy*, 19 *Md. Rep.*, 576. *Prather vs. Manro*, 11 *G. & J.*, 261. *Byrne vs. McPherson*, 12 *G. & J.*, 157.

*T. Parkin Scott*, for the appellees argued:

I. That the verdict ''for the defendants'' is sufficient, although it does not in terms, find for the defendants on each issue separately. .

The jury was instructed to consider each issue separately, and it is not to be presumed, that they did not do their duty. If the affidavits were properly rejected, there is no evidence that they did not do their duty. If each issue was considered by the jury, and found for the defendants, the verdict would be according to the finding. If the jury were not for the defendants on each issue, the verdict they found in their room, and adhered to the next morning in Court, was a false verdict, which is not to be presumed.

The verdict meets the issues proposed and answers them. It was not necessary that the jury should in their verdict say explicitly, that they found for the defendants on each issue: it would be sufficient to say they found for the defendants on all the issues; and this verdict necessarily implies as much. *Ramsay & Jenkins vs. Glass*, 9 *Gill*, 59. *Boofter vs. Rogers*, 9 *Gill*, 53. *Hawks vs. Crofton*, 2 *Burrows*, 698, 699, 700, before Lord Mansfield, and Justices Denison, Foster and Wilmot.

II. Every motion for a new trial is addressed to the sound legal discretion of the Court; and in this case, the Judge heard all the evidence, and was satisfied with the verdict. We have not the evidence in the record, but this Court without the evidence, cannot say that Judge MARTIN, who heard it, was wrong in refusing a new trial. In *Jennings vs. Pendergast*, 10 *Md. Rep.*, 352, this Court, in speaking of the judgment of the Court below on hearing the testimony, says, ''We have been deprived of this

advantage; the Orphans' Court enjoyed it, and we cannot be insensible to the value of the conclusions which it enabled them to derive from it.''

III. The affidavits of the jurors, as to their own misconduct, and the affidavit of the bailiff who had them in charge, as to what they said to him, were properly rejected.

The law of Maryland upon this point is too clear for doubt, although it is admitted that there are decisions the other way, out of Maryland.

If either of the jurors was dissatisfied with the sealed verdict, he might have dissented the next morning when called in Court, but did not. *Edelen vs. Thompson,* 2 *Harris & Gill,* 33, 34. *Bosley vs. The Chesapeake Ins. Co.,* 3 *Gill & Johnson,* 473. *Evans' Practice,* 324, 326.

In England the same rule prevails. *Saville vs. Lord Farnham,* 2 *Manning & Ryland,* 216, (17 *Com. Law,* 301.)

IV. But if the alleged misconduct of some of the jurors was proven, as it is not pretended that the defendants were implicated in it, they should not suffer.

The Judge who tried the cause thought the verdict right, and refused the new trial. He did not consider that ''the verdict is against evidence,'' as alleged in one of the reasons filed for a new trial.

V. And if the affidavits offered, could have been properly received, *if offered in time,* yet they were not offered in time: *Rules of Superior Court.* The rules are a law to the Court, *Gist's Adm'rs vs. Drakeley,* 2 *Gill,* 345, 346.

VI. The entry by the clerk of ''judgment on the verdict,'' if erroneous, which is not admitted, is merely a clerical error, for the Court did not give judgment. Such a mere technical error in the judgment is not cause for a new trial. *Ramsay & Jenkins vs. Glass,* 9 *Gill,* 62. *Brooke vs. Townshend,* 7 *Gill,* 16.

BARTOL, J., delivering the opinion of this Court, after stating the case as *ante*, pp. 105, 106, continued as follows:

The proceedings upon the motion to set aside the verdict and for a new trial, and the action of the Court thereon, form the subject of five bills of exception, involving questions which have been ably and elaborately discussed in the argument, and which have been carefully considered by this Court. The subject naturally presents itself under two general heads. 1st. As to the action of the Court below, in refusing a new trial, upon the grounds stated in the first three reasons assigned in support of the motion. 2nd. As to the sufficiency of the verdict, upon the issues.

The counsel for the appellees is right in the position he assumes that every motion for a new trial, is addressed to the sound legal discretion of the Court; and therefore no error can be ordinarily assigned with regard to the decision of the Court below upon such motion; nor is it a subject for review on appeal.

This general rule is conceded by the appellants' counsel, who admitted in the argument, that from the refusal of the Judge of the Superior Court to grant a new trial, it being matter within his discretion, no appeal would lie; provided that discretion had been exercised after hearing the evidence; but it is argued that the refusal to admit the evidence offered in support of the motion, was error in law, from which an appeal lies; because thereby the appellant was deprived of the exercise of the judgment and discretion of the Court upon the case as presented by the proof, to which he had a legal right. This is certainly a very nice distinction, but we are not prepared to say it may not be a sound one, and in some cases material to be observed. Some precedent may be found for it in the decisions of the cases of *Freeman vs. Morris et al. Busbee's R.*, 288, and *Stephenson vs. Stephenson*, 4 *Jones (N. C.) R.*, 474. The same point was presented to this Court

by the appellants in argument, in *Howard & Wife et al. vs. Waters et al.*, 19 *Md. Rep.*, 529; but not being necessarily involved in the case was not distinctly decided.

Without meaning to express any opinion upon the general proposition involved in the appellant's argument, it is very clear, that even conceding the right of appeal on this branch of the case, the decision of the Superior Court ought not to be reversed, if this Court should be of opinion, either that the testimony was properly excluded, or that it was immaterial and insufficient if admitted, to affect the validity of the verdict.

The testimony excluded consisted of the affidavits of four jurors, who sat on the case, to the effect that one of their number, William A. Albaugh, was suffering, during the progress of the trial, with a painful disorder of the bowels, which continued during the time the jury was confined in their room. Albaugh states that he was opposed to the verdict, but assented to it in order to obtain his release from the confinement of the jury room. Three other jurors testify to the sickness of Albaugh, and state that they believed the verdict for the *caveatees* to be erroneous, and assented to it for the purpose of relieving Mr. Albaugh.

To allow a verdict of a jury solemnly rendered, to be afterwards impeached upon such testimony, would, we think, be setting a dangerous precedent, tending in most cases to the defeat of justice. Although in some of the States a different practice has been allowed, we think the law in Maryland is well settled, that "the testimony of jurors cannot be heard to impeach their verdict, whether the conduct objected to in the jury be misbehaviour or mistake." This rule was laid down by the late Chief Justice ARCHER, sitting in Baltimore County Court, in *Bosley vs. The Chesapeake Ins. Co.*, reported in 3 *G. & J.*, 473, (note.) We refer to and adopt the decision of that eminent judge as the true exposition of the law as it has

been recognized and enforced in this State. It is supported, not only by the authority of adjudged cases in England and in this country, but by sound reason and public policy. In this case the testimony of the jurors tends to prove only misconduct on their part. It is not pretended that Mr. Albaugh's sickness was of such a character as to impair his mental capacity, or destroy his judgment. If unable from physical pain to endure the confinement of the jury room, the Court had the power of relieving him from the labors of his office, and would, upon his application, and a disclosure of the fact, have discharged the jury without a verdict; his duty was to have made known such affliction.

In this case the verdict was a sealed one, made after the adjournment of the Court for the day. Under our practice it was competent for either of the jurors, if dissatisfied with the verdict, to have dissented from it the next morning when called in Court, ( See 2 *H. & G.*, 33 and 34.) It does not appear that any dissatisfaction was then expressed, but all the jurors then united in rendering the verdict in open Court. To permit it now to be impeached, by an inquiry into the motives of jurors for assenting to it, would be clearly against public policy, tending to overthrow the safeguards of trial by jury, and in most cases defeat justice by exposing every verdict to impeachment.

We do not mean to say that the affidavits of jurors impeaching their verdict, ought in no case to be allowed. As was said by Chief Justice TANEY, speaking for the Supreme Court, (*United States vs. Reid*, 12 *Wheat.*, 366,) "It would hardly be safe to lay down any general rule upon this subject. Cases might arise in which it would be impossible to refuse them without violating the plainest principles of justice." But we are of opinion that the testimony of the jurors offered in this case, was inadmissible for the purpose of impeaching the verdict, and that

there was no error in excluding it. And we think the same reason and authorities support the ruling of the Superior Court in excluding the testimony of Croxall, the bailiff, as to the statements made to him by the jurors.

We now proceed to consider the question of the sufficiency of the verdict in form. This is a material inquiry, because, if the verdict be insufficient in law, indefinite, vague or uncertain, as alleged by the appellant, no judgment could be rendered thereon by the Orphans' Court, and a new trial would be necessary. A verdict must finally determine the issues, and be decisive between the parties. Lord Mansfield said in *Hawks vs. Crofton*, 2 *Burrows*, 699: "Where the intention of the jury is manifest and beyond doubt, the Court will set right matters of form." And in the same case, Justice Denison said, citing, *Hob.*, 54: "Though the verdict may not conclude formally or punctually to the words of the issue; yet if the point in issue can be concluded out of the finding, the Court shall work the verdict into form and make it serve." Construed by this rule, we are of opinion, that the verdict in this case is sufficient. Looking at the issues submitted to the jury, it is absolutely certain the jury could not have found as they did, without deciding every issue in favor of the defendants. In the case of *Hawks vs. Crofton*, Mr. Justice Foster makes this the test of the sufficiency of the verdict. Here the verdict is to the same effect as if the jury had said they found for the defendants on all the issues, which has always been held sufficient.

Some such question would have arisen if the verdict had been generally for the plaintiff, because from such a verdict it could not be certainly known whether some of the jury might not have found against the defendants on one issue, and some on another issue, without all agreeing on any one issue. In such case, according to the decision of the Court in *Riggs vs. Barry*, 2 *Curtis C. C. R.*, 259, the verdict would have been insufficient. Without meaning

to impugn the authority of that case, which seems to rest on sound reason, we think it is inapplicable to the case before us, and we concur with the Superior Court in thinking this verdict a sufficient finding upon all the issues.

There was error in entering a judgment for costs in the Superior Court. The established practice in such cases, is to certify to the Orphans' Court the verdict of the jury, and the costs, leaving for that Court to enter the proper judgment. The trial in the Court of law is merely auxiliary to the proceedings in the Orphans' Court, which alone has jurisdiction to pronounce judgment in the cause.

While we affirm the ruling of the Superior Court upon all the exceptions, the judgment, improperly entered below must be reversed.

*Judgment reversed, and*
*procedendo ordered.*

(Decided October 18th 1864.)