The derailment, in July, 1919, of a car of the defendant, in which the plaintiff was a passenger, resulted in an injury to the side of her body, which is claimed to have produced frequently recurring uterine hemorrhages. Upon the theory that this physical condition, to which the plaintiff was proved to be subject, was attributable to the shock and injury sustained in the accident, she was awarded $13,500, in October, 1921, by the verdict of a jury in her suit against the defendant for damages. The appeal from the judgment entered on the verdict requires us to review rulings on certain exceptions which are concerned solely with questions relating to the real nature and effect of the plaintiff's injuries.
There are eighteen exceptions in the record. The first, sixth, and tenth are not pressed. The second, third, fourth, and fifth refer to testimony of the plaintiff as to her medical and hospital expenses. With the aid of a memorandum, which she was permitted to use for the purpose of refreshing her memory, she testified to the following charges: for her room in the hospital, $216.80; for doctors' services, $881; and for medicines, $190. No evidence was offered in regard to these bills except the plaintiff's statement as to the total amounts incurred "since the accident," and as to the fact that the doctors' bills had not been paid. The objection is that the testimony afforded the jury no means of determining whether or not the expenses sought to be recovered were reasonable, and were wholly due to the injuries described in the declaration. The evidence on the subject was undoubtedly too general. It presented no details whatever as to the various charges for which the defendant was proposed to be made liable. There should have been a reasonable degree of particularity in the proof of the substantial expenses included in the plaintiff's claim, and the objection to the testimony on the subject was well founded.
The seventh and eleventh exceptions were taken because certain hypothetical questions, as to the cause of the plaintiff's *Page 246 
present condition, were allowed to be asked and answered. The physician, to whom the questions were propounded, had examined and treated the plaintiff at periods beginning more than eighteen months after the accident, and their opinion as to the cause of the hemorrhages from which she suffered was requested upon the basis of their observations and of the testimony attempted to be summarized in the interrogatories. There was reasonable ground of objection to the statement of the hypotheses upon which, in part, the physicians were asked for their opinions. The questions described generally the plaintiff's injuries as being "severe" and as having been shortly followed by hemorrhages which have since occurred "almost continually" and for periods lasting sometimes as long as two weeks. This statement tended, without design but in actual effect, to exaggerate the real conditions. There was an omission to mention the fact that the plaintiff was able to leave the hospital four days after the accident and to resume her regular work as a stenographer about six weeks later. This circumstance might not have affected the opinion expressed that the hemorrhages were caused by the injuries received in the accident, but the interrogatories by which the opinions were elicited should have stated more fully and conservatively the testimony upon which they were to be partly founded. The rule as to the proper form and elements of hypothetical questions was not sufficiently observed. Northern Central Railway Co. v. Green,112 Md. 487; Miller v. Leib, 109 Md. 414; Grill v.O'Dell, 113 Md. 625.
The subject of the eighth and ninth exceptions was the admission of the following testimony of one of the plaintiff's physicians: "Q. Doctor, what organs of the body would be affected in this patient, assuming that there was a second operation to remove the existing trouble? A. Ovary. Q. Will you be good enough to tell the Court and jury the effect of removal of the ovaries, on the question of bearing children? A. The effect of the removal of both ovaries, of course produces sterility." *Page 247 
According to the testimony, only one of the plaintiff's ovaries was affected, and the necessity for its removal could not be determined without an operation. There was no occasion for the admission of evidence which suggested a future condition of sterility, to be produced by the removal of both ovaries, as one of the consequences of the plaintiff's injury for which the defendant was to be held responsible.
No reversible error is apparent in the rulings on the twelfth, thirteenth and fourteenth exceptions, and no point was made of them in the argument.
The fifteenth exception questions the propriety of the reference in the plaintiff's prayer to the medical expenses, but in view of the admitted evidence on that subject we think the objection was properly overruled.
The most important question in the case is raised by the sixteenth exception. On the day of the rendition of the verdict a motion for a new trial was filed by the defendant. At the hearings on the motion, which began about two months later, affidavits were filed and evidence was adduced tending very strongly to show that the condition to which the plaintiff's claim for damages mainly referred was not the result of the accident on account of which the suit was brought, but had existed long before its occurrence. The plaintiff had testified at the trial that before the accident she was in perfect health. The depositions in support of the motion for a new trial were directly to the contrary. One was by a woman who occupied a room with the plaintiff in May and June preceding the accident, and who stated that the plaintiff was then in delicate health and "menstruated constantly and profusely." This affiant quoted the plaintiff as saying that she had received injuries, from which she had never recovered, by the collapse of a building, in Albany, New York, in which she had been employed. Another affidavit was by a matron in charge of the barracks in which the plaintiff was living at Camp Meade, where she was serving as a stenographer at the period of the accident which occasioned this suit. The *Page 248 
matron deposed that the plaintiff was previously delicate and freely discussed the severe injuries she had received in Albany, from which she had not, as she said, fully recovered. A member of the firm in Albany in whose service the plaintiff is said to have been formerly engaged, made affidavit to the effect that his firm in 1909 paid $3,000 in settlement of a suit by Ella R. Kemmy (the present suit being brought in the name of Helen R. Kimmey), for injuries she suffered by the collapse of the building in which she was employed, and he produced a copy of the complaint, stating her cause of action at that time, in which her injuries were characterized as serious and permanent. A specialist in diseases of women, who treated the plaintiff at her home in Albany during a period of several months beginning in February, 1920, deposed that his examination was negative, except for secondary anaemia, resulting from uterine bleeding, which was apparently due to an overgrowth of the lining of the uterus, and not to any injuries sustained in the accident in Maryland which she described. The ovaries, he said, were then normal in size and consistency. A Washington physician testified in person, at a further hearing on the motion for a new trial, that he treated the plaintiff in March, 1919, four or five months before the accident, for excessive bleeding from the womb. He was told by the plaintiff, he said, that from May, 1918, to the following January, "she bled practically on and off all the time," and from January, 1919, to the time of his treatment, "she bled excessively from eight to ten days every month." The defendant also offered evidence, at the hearings on the motion, explaining its failure and inability to discover and procure, in time for use at the trial, the testimony subsequently produced.
At the time of the presentation, in open court, of the depositions we have mentioned, no objection was made to them on the ground about to be noticed. In fact there was a virtual assent to their admission. They were treated by counsel on both sides and by the court, during the greater *Page 249 
part of the time occupied by the hearings, as being regularly in the case for the purpose for which they were offered. But before the conclusion of the hearings a motion ne recipiatur was filed, invoking a rule of the court below that a party making a motion for a new trial, "if he desires to file affidavits, shall give notice thereof at the time of making such motion and shall file his affidavits within ten days after any such motion shall be made." The motion ne recipiatur was granted, and the sixteenth exception complains of that action, which was followed by a refusal to order a new trial and by the entry of a judgment on the verdict.
In granting the motion ne recipiatur because the affidavits and testimony submitted by the defendant in support of its motion for a new trial had not been produced after the notice and within the time prescribed by the rule we have quoted, the court apparently did not give due consideration to the effect of the plaintiff's acquiescence and assent when the depositions were presented and formally admitted. The attitude assumed on her behalf at that time was not merely passive, but it was one of affirmative recognition of the testimony as proper to be received. Some evidence in opposition to the motion for a new trial was introduced. In our judgment, the course pursued by the plaintiff at the hearing involved a waiver of the rule in regard to notice, and time for the filing, of the affidavits. While the court may not have had authority to suspend the rule, there can be no doubt that it could be waived by a party for whose benefit it was intended. There is ample authority for this view. Hutton
v. Marx, 69 Md. 252; State v. McCarty, 60 Md. 373; WilkinManufacturing Co. v. Melvin, 116 Md. 97; Gemundt v.Shipley, 98 Md. 657; Chappell v. Real Estate Co.,89 Md. 258; Quynn v. Carroll, 22 Md. 296; Poe, Pl. Pr., sec. 668.
By its action in granting the motion ne recipiatur, the court below excluded from its consideration all the proof tending to show that the theory upon which the plaintiff's claim largely depended was erroneous. If the court had felt *Page 250 
at liberty to consider the evidence, then for the first time available, that the plaintiff was subject, before the accident in question, to the physical infirmity which it was supposed to have caused, and for which the defendant was therefore held liable, it is hardly conceivable that a new trial would have been refused. It would be plainly unjust to permit a verdict to stand, as against an application for a new trial seasonably made, if credible evidence, competent to be considered, and not previously discoverable by due diligence, supported the conclusion that the jury were misled as to the principal part of their award.
The general rule is that the disposition of a motion for a new trial is within the sound discretion of the trial court and is not a subject of appeal. There is a review of the decisions to that effect in the recent case of Chiswell v. Nichols,139 Md. 442. The exception now under consideration, however, is not directed to the action of the court in overruling the motion for a new trial, but to its exclusion of evidence by which its judgment and discretion in regard to the motion should properly have been influenced. The defendant was entitled to the exercise of a sound discretion in the disposition of its motion. A discretion could not be characterized as sound which wholly disregarded evidence by which its exercise should have been aided. In Browne v. Browne, 22 Md. 103, it was contended that, while the action of the court below on a motion for a new trial was not appealable, provided its discretion was exercised after the evidence was heard, "the refusal to admit evidence offered in support of the motion was error in law, from which an appeal lies, because thereby the appellant was deprived of the exercise of the judgment and discretion of the court upon the case as presented by the proof, to which he had a legal right." In reference to this contention, as set forth in the opinion delivered by JUDGE BARTOL, it was said by that learned jurist: "This is certainly a very nice distinction, but we are not prepared to say it may not be a sound one, and in some cases *Page 251 
material to be observed. Some precedent may be found for it in the decisions of the cases of Freeman v. Morris et al.,
Busbee (N.C.), 288, and Stephenson v. Stephenson, 4 Jones (N.C.) R. 474. The same point was presented to this Court by the appellants, in argument, in Howard v. Waters, 19 Md. 529; but not being necessarily involved in the case was not distinctly decided."
In Mattox v. United States, 146 U.S. 140, the Supreme Court, in ruling upon an exception to the exclusion of certain affidavits offered in support of a motion for a new trial, said: "The allowance or refusal of a new trial rests in the sound discretion of the court to which the application is addressed, and the result cannot be made the subject of review by writ of error (Henderson v. Moore, 5 Cranch, 11; Newcomb v. Wood,97 U.S. 581), but in the case at bar the District Court excluded the affidavits, and, in passing upon the motion, did not exercise any discretion in respect of the matters stated therein. Due exception was taken and the question of admissibility thereby preserved." The affidavits having been found to be competent, the Court concluded its discussion of the question with the statement: "We should, therefore, be compelled to reverse the judgment because the affidavits were not received and considered by the court; but another ground exists upon which we must not only do this, but direct a new trial to be granted."
In 3 C.J. 471, it is said: "The rule that a discretionary ruling is not reviewable on appeal does not apply where the decision complained of was not made in the exercise of discretion, but was based upon a question of power in the court below, or upon some ground of law not involving discretion." Many cases are cited in support and illustration of that statement.
The defendant in this case had a right to have the court consider the depositions filed in support of its motion. If they had been filed in accordance with the rule, and were otherwise competent, it would certainly not be contended that it *Page 252 
was within the court's irreviewable discretion to decide that they should be excluded. As the rule was effectually waived, and the depositions were actually admitted and recognized, the defendant was as much entitled to have them given due probative effect as if they had been filed within the time and after the notice which the rule prescribed. This appeal is not from the order overruling the motion for a new trial, but from a judgment rendered after a new trial had been refused, and we are dealing with an exception which complains of the exclusion of evidence tending with practical certainty to produce the result to which the motion was directed. Unquestionably this action was prejudicial to the defendant's rights, and it deprived the court of the only available means of exercising a sound discretion in determining whether an opportunity for a retrial of the case should be afforded. The distinction, suggested in Browne v.Browne, supra, between a discretionary ruling, and one which affects a legal right, is well supported by reason and authority, and is proper to be made in the present case.
The evidence introduced by the defendant in support of its motion related to a phase of the plaintiff's case which was peculiarly within her own knowledge, and which does not appear to have been disclosed prior to the trial. No reference was made in her declaration to uterine hemorrhages as having resulted from the injuries received while she was a passenger in the defendant's car. It would not be reasonable to hold that the defendant was so strictly bound to anticipate such a claim as to be debarred from proving it to be fictitious, as a ground for an application, made in due time, to have the verdict set aside in order that the case might be retried.
The plaintiff was painfully injured in the accident which resulted in this suit, and her recovery, if the defendant is liable, should adequately compensate her for the effect of the injuries she then sustained. But it would be a gross injustice to require the defendant to make an appropriation *Page 253 
of its funds for her benefit on account of a physical condition not caused by any act or negligence for which it may be charged with responsibility. A retrial of the case would leave the plaintiff at liberty to recover the full amount of damages to which she may be justly entitled. The only alternative would be to affirm a judgment enforcing a claim which, to a large extent, upon this record, is involved in serious suspicion as to its validity and merit.
The exclusion of the depositions supporting the motion for a new trial was a reversible error which the defendant had a right to make the subject of an exception, and to have reviewed on appeal from the judgment.
The two remaining exceptions, relating to the refusal to grant a new trial and to strike out the judgment, need not be discussed.
Judgment reversed, with costs, and case remanded for a newtrial. *Page 254