785 A.2d 756

**Christopher MERRITT,**

v.

**STATE of Maryland.**

**No. 29, Sept. Term, 2000.**

Court of Appeals of Maryland.

Dec. 5, 2001.

Margaret L. Lanier, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief,) Baltimore, for petitioner.

Devy Patterson Russell, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief,) Baltimore, for respondent.

Argued Before BELL, C.J., and ELDRIDGE, RODOWSKY *, RAKER, WILNER, CATHELL and HARRELL, JJ.

ELDRIDGE, J.

The defendant in this criminal case, Christopher Merritt, was convicted by a jury in the Circuit Court for Baltimore City of first degree premeditated murder, first degree felony murder, attempted armed robbery, and use of a handgun in the commission of a felony. Approximately two days after the trial, the State learned that the search warrant for the defendant's home and other documents, not admitted into evidence, were mistakenly sent to the jury room during deliberations. Defense counsel's motion for a new trial, based upon the erroneous submission of the documents, was denied. We issued a writ of certiorari to decide whether Merritt is entitled to a new trial.

## I.

The instant case arises from the murder of Brian Owens. The principal witness against the defendant Merritt was Artinus Shands, who claimed that he participated in the crime with Merritt. Shands testified for the State pursuant to a plea agreement. Under the agreement, in exchange for his

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

truthful testimony and his guilty plea, Shands would receive a life sentence for murder, with all but fifty years suspended, and a concurrent sentence of twenty years for use of a handgun in the commission of a felony.

Shands's testimony was as follows. Ronald Laboard, Owens, Merritt, Shands, and several others gathered for a dice game in the outside stairwell of the apartment building at 2404 Winchester Street in Baltimore City. At some point during the game, Owens had won more than a hundred dollars from each of the other players. As a result, according to Shands, Merritt became upset and decided to regain his money. Merritt showed Shands a gesture with his hand suggesting a gun. Merritt and Shands then left the game and walked to the parking lot adjacent to the building. There, Merritt retrieved two handguns from his car. Shands said that Merritt gave Shands a nine millimeter handgun and Merritt took a .380 caliber handgun. As they returned to the game, Merritt approached Owens, who was seated on the steps, and ordered him and the other players to lie down. Merritt pointed his gun at Owens and demanded the return of his money. Shands stated that Owens did not hand over the money, that Merritt's gun "went off," and that Shands and Merritt continued to shoot Owens. Owens fell to the bottom of the stairs, and Merritt, Shands, and Laboard fled in Merritt's car without taking Owens's money.

The police obtained arrest warrants for Merritt, Shands, and Laboard, charging each with the victim's murder. In a taped statement, Merritt stated that he, Shands, Laboard and several others were rolling dice and drinking when two men approached and ordered them to get down. One of the men held a gun to Merritt's head and took the money that was in his hand. When the men demanded money from Owens, he moved and was shot several times. Following the shooting, everyone got up and ran from the scene. Merritt stated that he, Shands, and Laboard left together in Merritt's car.

Shands initially denied any knowledge of the incident. The police played him the portion of Merritt's taped statement in

which Merritt said that Shands was present during the shooting. Believing that Merritt had told the police that only Shands shot the victim, Shands told the police that both he and Merritt had been the shooters. At trial, Shands corroborated his taped statement. The State also introduced into evidence letters exchanged between Shands and Merritt after both of them were incarcerated awaiting trial. In those letters, each asked the other to tell his attorney that they had given false taped statements to the police because their families had been threatened.

Ronald Laboard, who is Merritt's cousin, initially told the police that Merritt and Shands shot the victim. Laboard identified Merritt and Shands as the shooters from separate photographic arrays. The State eventually dropped the murder charges against Laboard. At the trial, however, Laboard testified that his initial statement to the police was false. Laboard stated that he was with the others at the dice game but that he left the game after he lost his money. He testified that he was not present when the shooting took place.

The State presented several police witnesses. Officer Eric Isom was the patrol officer who responded to the call that shots had been fired. At the scene, Isom observed dice, a Bacardi rum bottle, and two baggies containing a white, rock-like substance. Kimberly Fowler was the crime lab technician on the scene. She recovered 19 cartridge casings as well as bullets and fragments. She also recovered two liquor bottles and some dice. James Wagster, an expert on firearms, testified that the cartridge casings recovered from the scene were fired from a .380 caliber handgun and a .40 caliber Smith and Wesson handgun. As an explanation for Shands's testimony that a .380 handgun and a nine millimeter handgun were used in the shooting, Wagner testified that a nine millimeter handgun and a .40 caliber handgun look alike.

Two days after Merritt was convicted, the State learned from a juror that defense exhibit 6, which included the application for the search and seizure warrant for Merritt's home, the warrant, the affidavit in support of the warrant, the inventory

return, and a copy of Merritt's taped statement to police, were present in the jury room during deliberations. Exhibit 6 had been marked for identification only and had not been admitted into evidence. The courtroom clerk, however, marked "Evid" on the exhibits list next to the line referring to exhibit 6, reflecting her erroneous belief that the exhibit had been admitted into evidence.

Exhibit 6 contained an affidavit setting forth the credentials of Detective Carol Opher. Specifically, the affidavit stated that Opher had been a member of the Baltimore City Police Department for more than seventeen years and that, by executing search and seizure warrants in the past, she had obtained evidence that resulted in the convictions of over one hundred defendants. The affidavit also contained a statement from Detective Opher that, during interviews of witnesses, it was revealed that "one of the persons responsible for the murder of Brian Owens is Chris Merritt." The affidavit disclosed that, while being interviewed, Merritt admitted to owning a .38 caliber handgun which he said could be found in his home. According to the affidavit, Merritt also admitted owning a .380 caliber handgun.

Furthermore, a transcript of Merritt's taped statement to the police was included in exhibit 6. A redacted copy of that statement had been admitted into evidence at trial. In the portions of the statement which had been redacted before being admitted into evidence, but were not redacted in the statement included in exhibit 6, Merritt admitted to selling drugs before the murder and to owning a .38 caliber handgun. Finally, the inventory return contained a listing of the property actually seized from Merritt's residence. The list included a shoe box containing a green leafy substance, plastic baggies, and rolling papers. These items had not been admitted into evidence.

In the motion for a new trial, defense counsel argued that the presence of exhibit 6 in the jury room during deliberations resulted in probable prejudice to Merritt. The trial court denied the defense's motion, stating: "After considering the

quantity and quality of the other evidence produced at trial, it cannot be said that the" presence of exhibit 6 "in the jury room probably resulted in prejudice to the defense." The court continued that "the information is harmless in light of the overpowering evidence in this case." The Circuit Court concluded that Merritt "received a fair trial despite the unintentional submission by the courtroom clerk of extraneous material into the jury room during deliberations."

The Court of Special Appeals, in an unreported opinion, affirmed. Merritt filed in this Court a petition for a writ of certiorari which we granted. *Merritt v. State,* 359 Md. 28, 753 A.2d 1 (2000).

## II.

The certiorari petition presented two questions, one relating to the appropriate standard for appellate review in this case and the other relating to the merits of the trial court's denial of the motion for new trial. Merritt argues (petitioner's brief at 11, 16):

"I. Under the circumstances [of this case], the proper standard of appellate review of the denial of a motion for a new trial is error, not abuse of discretion.

\* \* \*

II. The court either erred, or in the alternative, abused its discretion in denying the motion for a new trial, when the motion was based on the fact that prejudicial documentary evidence which was never entered into evidence was erroneously submitted to the jury at the start of its deliberations."

The State, relying on a lengthy Court of Special Appeals' opinion concerning the subject (*Isley v. State,* 129 Md.App. 611, 743 A.2d 772 (2000)), and on language in older Court of Appeals' opinions, first argues that trial judges' rulings on motions for new trials are always discretionary matters, that a trial judge's exercise of discretion in refusing to grant a new trial is "absolut[ely]" unreviewable on appeal, and that, in fact, " 'no appeal lies from the action of the court in overruling a

motion for new trial' " (respondent's brief at 7). According to the State, a trial judge's denial of a motion for a new trial is subject to appellate review "only ... where no discretion was exercised by the judge in rendering his decision." (*Id.* at 8). Alternatively, the State argues that, if the denial of the motion for a new trial were reviewable on appeal, the appropriate standard under the circumstances of this case is "the abuse of discretion standard of review" and that the trial judge's "discretion to deny Merritt's motion for a new trial ... was a proper exercise of his discretion." (Id. at 10, 18).

### A.

■ Initially, we flatly reject the State's argument and the thesis of *Isley v. State, supra,* 129 Md.App. at 639–674, 743 A.2d at 784–806, that the denial of a motion for new trial is absolutely unreviewable on appeal except for the situation where the trial judge has failed to exercise any discretion. As explained in detail by Judge McAuliffe for the Court in *Buck v. Cam's Rugs,* 328 Md. 51, 54–59, 612 A.2d 1294, 1296–1298 (1992), the Maryland case law governing appellate review of rulings on motions for new trials has changed and evolved over the years. Moreover, language from older cases has sometimes been carelessly repeated in more recent cases without taking into consideration the changes in the law. The State's argument in the case at bar, however, represents an effort to change the present law, to adopt a rule from the past, and to require that our most recent cases on the subject be overruled. This we decline to do.

The early opinions of this Court clearly took the position that a trial court's ruling on a motion for a new trial was not subject to appellate review under any circumstances. The ruling would not have been subject to appellate review even when the trial judge refused to exercise any discretion. This principle of non-reviewability, set forth in the early cases, seems to have been based, at least in part, on the limited scope of, and requirements of, writs of error and bills of exceptions. *See Anderson v. State,* 5 H. & J. 174, 175 (1821). *See also, e. g., Marine Ins. Co. v. Hodgson,* 10 U.S. 206, 6

Cranch 206, 218, 3 L.Ed. 200, 203–204 (1810); *Balto. Paint Works v. Parts Co.,* 173 Md. 210, 215, 195 A. 558, 561 (1937) (referring to "the common-law rule that exceptions must be settled and signed before verdict"); *Davis v. Carroll,* 71 Md. 568, 569, 18 A. 965 (1889); *Bond v. Citizens' National Bank,* 65 Md. 498, 501–502, 4 A. 893, 895–896 (1886); *Donohue v. Shedrick,* 46 Md. 226, 229–231 (1877); *Archer v. State,* 45 Md. 457, 460 (1876) ("The facts which were relied upon . . . for a reversal of the ruling . . . on the motion for a new trial, are contained in a bill of exceptions, and all of them were offered . . . upon the motion for a new trial. It is very clear that no such bill of exceptions is authorized by law"); *Baltimore v. Reynolds,* 18 Md. 270, 272–273 (1862); *Wall's v. Wall's,* 2 H. & G. 79, 81 (1827).

Furthermore, the principle that rulings on motions for new trials were unreviewable on appeal appears to have been simply an application of the more general rule, adhered to by appellate courts at an earlier time, that any trial court ruling on a discretionary matter was insulated from appellate review. As this Court stated in *Wall's v. Wall's, supra,* 2 H. & G. at 81, "where the subject decided by the inferior Court is left by law to their discretion, . . . it has been adjudged that a writ of error will not lie." *See, e.g., Marine Ins. Co. v. Hodgson, supra,* 10 U.S. 206, 6 Cranch at 217–218, 3 L.Ed. at 203–204; *Wash., B. & A. Railroad Co. v. Kimmey,* 141 Md. 243, 251, 118 A. 648, 651 (1922) (referring to the " 'rule that a discretionary ruling is not reviewable on appeal' ").

An exception to the principle that rulings on motions for new trials were not reviewable on appeal was first discussed by this Court in *Browne v. Browne,* 22 Md. 103, 112–113 (1864). In *Browne,* after a jury verdict, counsel for the losing party filed a motion for a new trial accompanied by affidavits of four jurors who stated that another juror was sick during the trial and the jury deliberations, that the sick juror was opposed to the verdict arrived at by the other jurors, and that the sick juror "assented to it in order to obtain his release from the confinement of the jury room." *Id.* at 113. The trial

court held that the statements by the four jurors were inadmissible and denied the motion for a new trial.

On appeal, in setting forth the general rule of non-reviewability, this Court in *Browne* for the first time qualified what had previously been stated as an absolute rule. The Court said (*id.* at 112, emphasis added):

"[E]very motion for a new trial, is addressed to the sound legal discretion of the court; and therefore no error can be *ordinarily* assigned with regard to the decision of the court below upon such motion...."

The *Browne* opinion went on to explain the exception argued for by the appellant (*ibid.*):

"[B]ut it is argued that the refusal to admit the evidence offered in support of the motion, was error in law, from which appeal lies; because thereby the appellant was deprived of the exercise of the judgment and discretion of the court upon the case as presented by the proof, to which he had a legal right. This is certainly a very nice distinction, but we are not prepared to say it may not be a sound one...."

The Court then assumed *arguendo* that the exception should be recognized and held that the trial judge did not err (*id.* at 113):

"Without meaning to express any opinion upon the general proposition involved in the appellant's argument, it is very clear, that even conceding the right of appeal on this branch of the case, the decision of the Superior Court ought not to be reversed, if this Court should be of opinion, either that the testimony was properly excluded, or that it was immaterial and insufficient if admitted, to affect the validity of the verdict."

The Court upheld the trial judge's ruling on the ground "that 'the testimony of jurors cannot be heard to impeach their verdict....'" *Ibid.*

The "exception" discussed in the *Browne* opinion was applied by this Court in *Wash., B. & A. Railroad Co. v. Kimmey, supra,* 141 Md. 243, 118 A. 648, which involved a motion for a

new trial based on newly discovered evidence. In *Kimmey*, as in *Browne*, the motion for a new trial was accompanied by affidavits setting forth testimony, and the trial judge excluded the evidence. This Court, holding that the exclusion of the evidence constituted error, and relying on the language from *Browne*, reversed the denial of the motion for a new trial. The Court explained (141 Md. at 250, 118 A. at 650–651, emphasis added):

"The general rule is that the disposition of a motion for a new trial is within the sound discretion of the trial court and is not a subject of appeal.... The exception now under consideration, however, is not directed to the action of the court in overruling the motion for a new trial, but to its exclusion of evidence *by which its judgment and discretion* in regard to the motion *should properly have been influenced.* The defendant was entitled to the exercise of *a sound discretion* in the disposition of its motion. A discretion could not be characterized *as sound* which wholly disregarded evidence by which its exercise should have been aided."

It has been suggested that the language in *Browne* and the holding in *Kimmey* simply stand for the principle that, in ruling on a new trial motion, a trial judge's failure to exercise any discretion is reviewable on appeal, but that the judge's actual exercise of discretion remains absolutely unreviewable. *Isley v. State, supra,* 129 Md.App. at 645–650, 743 A.2d at 790–793. *See also Carlile v. Two Guys,* 264 Md. 475, 478, 287 A.2d 31, 33–34 (1972). This suggestion is not accurate. In both *Browne* and *Kimmey* the trial judges exercised discretion. The reversal in *Kimmey* was because the trial judge committed error in excluding evidence and, therefore, did not "properly" exercise discretion and did not "exercise ... a sound discretion in the disposition of [the] motion." 141 Md. at 250, 118 A. at 651. The appellate reversal in *Kimmey* was clearly based on findings of both error and abuse of discretion, and some later cases in this Court have so construed it. *See, e.g., B.J. Linthicum's Sons v. Stack,* 213 Md. 344, 347, 131 A.2d 721, 723 (1957) ("The only exception to the rule [of non-

reviewability] ... was dealt with as an abuse of discretion. *See Wash., B. & A. R. Co. v. Kimmey,* 141 Md. 243, 118 A. 648").

For the next twenty-five years after the *B.J. Linthicum's Sons* case, some of this Court's opinions would state without qualification that discretionary rulings on new trial motions were not reviewable, whereas other opinions seemed to recognize that such rulings were reviewable for abuse of discretion or for the failure to exercise discretion. See the review of cases in *Buck v. Cam's Rugs, supra,* 328 Md. at 54–57, 612 A.2d 1294, 1296–1298 (1992). Compare, *e.g., Carlile v. Two Guys, supra,* 264 Md. at 477–478, 287 A.2d at 33–34, and *Kirkpatrick v. Zimmerman,* 257 Md. 215, 218, 262 A.2d 531, 532 (1970), with *Grabner v. Battle,* 256 Md. 514, 519, 260 A.2d 634, 636 (1970) (holding "that there was a knowledgeable exercise by the trial judge of his discretionary powers and that he did not abuse his sound discretion in denying the appellant's motion for a new trial"); *Perlin Packing Co. v. Price,* 247 Md. 475, 491, 231 A.2d 702, 712 (1967) ("There was no manifest error or abuse of discretion which would warrant this Court in disturbing the" denial of a new trial motion); *State, Use of Shipley v. Walker,* 230 Md. 133, 137, 186 A.2d 472, 474 (1962) ("We find no abuse of discretion in the instant case"); *Martin v. Rossignol,* 226 Md. 363, 366–367, 174 A.2d 149, 151 (1961) ("the denial of a motion for a new trial is not appealable, at least where the trial court fairly exercises its discretion"); *Brinand v. Denzik,* 226 Md. 287, 293, 173 A.2d 203, 206 (1961) ("we find no abuse of discretion by the trial court"); *Colter v. State,* 219 Md. 190, 191–192, 148 A.2d 561 (1959) ("an appeal will not lie from an order denying a new trial, at least where it is not claimed that there was an abuse of discretion").

Commencing with this Court's opinion in *Wernsing v. General Motors Corp.,* 298 Md. 406, 470 A.2d 802 (1984), however, we have consistently taken the position that denials of motions for new trials are reviewable on appeal and that discretionary rulings on such motions are subject to reversal where there is an abuse of discretion. *Wernsing* was a personal injury action based on alleged negligence and an allegedly defective prod-

uct, and one of the chief issues was whether certain actions were the proximate cause of the accident. Evidence, other than juror affidavits, disclosed that the jurors during deliberations had obtained a dictionary and consulted it in arriving at a decision on the proximate cause issue. This evidence was presented to the trial court during the hearing on the motion for a new trial, and the court thereafter denied the motion. This Court, in an opinion by Judge Rodowsky, held that the denial of the new trial motion was reviewable "for an abuse of discretion," and the Court further held that the "degree of probable prejudice [was] so great that it was an abuse of discretion to deny a new trial." *Wernsing*, 298 Md. at 420, 470 A.2d at 809.

A few months after our decision in *Wernsing*, we reiterated that, "[o]rdinarily, a trial court's order denying a motion for a new trial will be reviewed on appeal if it is claimed that the trial court abused its discretion." *Mack v. State*, 300 Md. 583, 600, 479 A.2d 1344, 1352 (1984). In *Mack*, however, we held that the trial court's denial of the motion, on the merits, was fully "consonant with this Court's consistent holdings" and that, therefore, "we shall not disturb the exercise of the trial court's discretion." 300 Md. at 601, 479 A.2d at 1353.

As earlier indicated, in *Buck v. Cam's Rugs, supra*, 328 Md. 51, 612 A.2d 1294, we reviewed the Maryland cases concerning appellate review of rulings on motions for new trials, recognized that there were conflicting lines of opinions, and reaffirmed the holdings in *Wernsing* and *Mack* "that an appeal will lie from the ... denial of a motion for a new trial" and that a discretionary ruling on a motion for new trial was subject to "review under an abuse of discretion standard." *Buck v. Cam's Rugs, supra*, 328 Md. at 56–57, 612 A.2d at 1297. The Court in *Buck* also pointed out that under some circumstances a trial judge's discretion to deny a motion for a new trial is much more limited than under other circumstances. In fact, we continued, there are situations in which there is virtually no discretion to deny a new trial. The *Buck* opinion thus explained (328 Md. at 58–59, 612 A.2d at 1298):

"On the other hand, a trial judge has virtually no 'discretion' to refuse to consider newly discovered evidence that bears directly on the question of whether a new trial should be granted. *See Wash., B. & A. R. Co. v. Kimmey, supra,* 141 Md. at 250, 118 A. 648 ('discretion could not be characterized as sound which wholly disregarded evidence by which its exercise should have been aided'). *See also Browne v. Browne,* 22 Md. 103, 112 (1864). And, if newly discovered evidence clearly indicates that the jury has been misled, a new trial should be granted.

\* \* \*

"Similarly, where competent extrinsic evidence discloses that a jury's consideration of the case was seriously distorted by information that should not have been before the jury, a trial judge may have little or no 'discretion' to deny a new trial. *See Wernsing v. General Motors Corp., supra,* 298 Md. at 420, 470 A.2d 802. . . .

"Accordingly, it may be said that the breadth of a trial judge's discretion to grant or deny a new trial is not fixed and immutable; rather, it will expand or contract depending upon the nature of the factors being considered, and the extent to which the exercise of that discretion depends upon the opportunity the trial judge had to feel the pulse of the trial and to rely on his own impressions in determining questions of fairness and justice."

*See also, e.g., Argyrou v. State,* 349 Md. 587, 600, 709 A.2d 1194, 1200 (1998) (reiterating "that the breadth of a trial judge's discretion to grant or deny a new trial . . . will expand or contract depending upon the nature of the factors being considered"); *Yorke v. State,* 315 Md. 578, 590, 556 A.2d 230, 235–236 (1989) (denial of a new trial motion is reviewable under an abuse of discretion standard); *Stevenson v. State,* 299 Md. 297, 304, 473 A.2d 450, 453 (1984) (same).

Consistent with the recognition in *Buck* that sometimes a trial court has virtually no discretion to deny a new trial motion, we have taken the position that some denials of new trial motions are reviewable under a standard of whether the

court erred rather than under an abuse of discretion standard. Accordingly, when an alleged error is committed during the trial, when the losing party or that party's counsel, without fault, does not discover the alleged error during the trial, and when the issue is then raised by a motion for a new trial, we have reviewed the denial of the new trial motion under a standard of whether the denial was erroneous. *See Taylor v. State,* 352 Md. 338, 344, 354, 722 A.2d 65, 68, 72–73 (1998); *State v. Stanley,* 351 Md. 733, 749, 720 A.2d 323, 330–331 (1998); *Pinkney v. State,* 350 Md. 201, 217–218, 711 A.2d 205, 213–214 (1998); *Ware v. State,* 348 Md. 19, 34–35, 54–55, 702 A.2d 699, 706–707, 716 (1997). Also, in these criminal cases where we concluded that error did occur, the matter of prejudice was reviewed under the harmless error standard of *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976). *See Taylor v. State, supra,* 352 Md. at 354, 722 A.2d at 72; *Ware v. State, supra,* 348 Md. at 48, 702 A.2d at 713.

 The standard for determining whether error is prejudicial, set forth in *Dorsey v. State,* is as follows (276 Md. at 659, 350 A.2d at 678):

"[W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated."

And when the error involves the admission or exclusion of evidence, the *Dorsey* opinion continued (*ibid.*):

"Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict."

B.

 In the case at bar, the result would be the same whether the denial of the motion for a new trial is reviewed under an abuse of discretion standard or under an error

standard. Nevertheless, under our cases, the denial of Merritt's motion for a new trial should be reviewed under the standard of whether error was committed and, if error was committed, whether it was harmless under *Dorsey*.

Merritt's argument is that error was committed when the courtroom clerk marked the exhibit list as if exhibit 6 had been admitted into evidence, and when exhibit 6 was submitted to the jury. The alleged error was not discovered until after the trial, and thus it could only have been raised by a motion for a new trial. Finally, according to Merritt, the error was clearly prejudicial under the *Dorsey* standard. This scenario is similar to that involved in *Taylor v. State, supra; Pinkney v. State, supra;* and *Ware v. State, supra.* As in those cases, the question is whether error was committed and whether it was harmless under the *Dorsey* test.

■ There is no doubt that error was committed during Merritt's trial when the courtroom clerk mistakenly marked "Evid" on the exhibit list next to exhibit 6 and when, consequently, exhibit 6 was submitted to the jury as if it had been admitted into evidence. The substance and result of the clerk's action was essentially the same as the action of a trial judge in erroneously admitting an exhibit into evidence. The only real difference would be that, in the latter situation, defense counsel would have been aware of the action and would have had an opportunity to object.

Moreover, Maryland Rule 4–326(a) specifies what may be taken to the jury room. The rule provides (emphasis added):

"(a) **Items Taken to Jury Room.** Jurors may take notes regarding the evidence and they may keep the notes with them when they retire for their deliberations. Unless the court for good cause orders otherwise, the jury may also take the charging document and *exhibits which have been admitted into evidence,* except that a deposition may not be taken into the jury room without the agreement of all parties and the consent of the court. Electronically recorded instructions or oral instructions reduced to writing may be taken into the jury room only with the permission of the

court. On request of a party or on the court's own initiative, the charging documents shall reflect only those charges on which the jury is to deliberate. The court may impose safeguards for the preservation of the exhibits and the safety of the jurors."

Under the rule, exhibits which have not been admitted into evidence obviously should not be submitted to the jury.

It is true that prejudice is not presumed when unadmitted exhibits are submitted to the jury, just like prejudice is not presumed "when the jury considers evidence admitted by the trial court which is later determined to have been erroneously admitted." *State Deposit v. Billman,* 321 Md. 3, 16, 580 A.2d 1044, 1050 (1990), and cases there cited. Nonetheless, in a *criminal* case, when items are improperly given to the jury in violation of Rule 4–326(a), the determination of prejudice is based upon the harmless error standard of *Dorsey v. State, supra. See Sherman v. State,* 288 Md. 636, 640–642, 421 A.2d 80, 82–83 (1980).[1] *See also* Judge Cathell's discussion for the court in *Aron v. Brock,* 118 Md.App. 475, 524–525, 703 A.2d 208, 232 (1997).

In the case at bar, we are not persuaded beyond a reasonable doubt that the submission of exhibit 6 to the jury "in no way influenced the verdict," *Dorsey,* 276 Md. at 659, 350 A.2d at 678. The application for the search and seizure warrant contained a statement by the detective that she was experienced, having made arrests that led to 100 convictions, and that she determined that Merritt was responsible for the murder. We specifically warned about this type of evidence in *Dorsey,* as tending to portray a detective as " 'a super-investi-

---

1. Although *Sherman v. State* was a 5–2 decision by this Court, all seven of the judges took the position that when there is a violation of what is now Rule 4–326(a), and documents are improperly submitted to the jury in a criminal case, the standard for determining prejudice is that set forth in *Dorsey v. State.* The two dissenting judges in *Sherman* were of the view that "the rule violation was harmless beyond a reasonable doubt under the standard adopted in *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976)." *Sherman,* 288 Md. at 642–643, 421 A.2d at 83 (Murphy, C.J., dissenting).

gator'" and improperly bolstering the detective's testimony against that of other witnesses. 276 Md. at 644–645, 350 A.2d at 669–670. The investigations which contributed to the detective's conviction rate were wholly irrelevant and prejudicial. Moreover, the detective's statement pronouncing "one of the persons responsible for the murder of Brian Owens is Chris Merritt" was clearly improper and prejudicial opinion evidence on the ultimate issue at the trial. See the discussion in *Bohnert v. State*, 312 Md. 266, 277–279, 539 A.2d 657, 662–663 (1988).

The detective also stated in the affidavit that Merritt admitted to owning a .38 caliber handgun and a .380 caliber handgun, the same caliber used in commission of the murder. Merritt's statement to police that he owned a .38 caliber gun was successfully redacted from the taped statement admitted at trial. There was no evidence admitted at the trial that Merritt told police that he owned the same caliber gun, .380, as one of the murder weapons. The only evidence that Merritt owned guns came from the testimony of Shands, the accomplice. These statements contained in the affidavit, as to Merritt's ownership of weapons, improperly corroborated Shands's testimony and thus were extremely prejudicial.

Exhibit 6 contained Merritt's statement that he was "selling weed" before the crime and included the inventory list of items seized from Merritt's home evidencing drug dealing. Such evidence of other crimes would not be admissible under the circumstances of this case, and it was highly prejudicial in showing the "criminal propensity" and "criminal character of the defendant," *Snyder v. State*, 361 Md. 580, 602–603, 762 A.2d 125, 137–138 (2000), and cases there cited. *See also, e.g., Skrivanek v. State*, 356 Md. 270, 291, 739 A.2d 12, 23–24 (1999); *Harris v. State*, 324 Md. 490, 496–497, 597 A.2d 956, 959–960 (1991); *State v. Werner*, 302 Md. 550, 556–557, 489 A.2d 1119, 1123 (1985).

The trial judge was of the view that the "overpowering evidence" of Merritt's guilt rendered harmless the submission of exhibit 6 to the jury. The principal witness for the State

providing the direct evidence of Merritt's guilt, however, was the accomplice and admitted murderer, Shands. The witness Laboard repudiated his earlier statement implicating Merritt. In light of the prejudicial nature of exhibit 6, we cannot conclude, beyond a reasonable doubt, that the submission of exhibit 6 to the jury in no way influenced the verdict.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*