1816.

Green
vs
M'Clellan

of justice, &c. The question is not whether *Gorsuch* is a justice of the peace, but whether he did the act as such. The recital by the clerk is unfounded from any thing that came from *Gorsuch.* The clerk might know that he was a justice, but he could not know that he had done the act in his character as such. The recital in the record did not exist when the attachment issued or was returned; and the recital in the attachment is unsupported by any thing appearing, and cannot aid the defect. The clerk's issuing the writ, and stating *Gorsuch* to be a justice, could not make his illegal act valid. He may have sent his resigna- tion to the executive, of which the clerk had no knowledge, and may not have acted as a justice when he issued the warrant. If he had stated himself to be a justice, then it might be inferred he was what he stated himself to be. 4. No other evidence, but the certificate of the clerk, that the judge had authority to administer the oath, can be received. The act is imperative that it shall not be evi- dence unless there be a certificate of the clerk that the judge had authority to administer the oath. No admission of the parties can cure the defect. The certificate by the clerk is only that he is a judge, and that to his legal attes- tations due faith and credit were to be given. He does not certify that the particular act was a legal one. The legal acts which he certified were not those under our laws, but those under their own laws, when he acted as judge of that court of which the clerk certified he was a judge. The incident of administering an oath does not necessarily fol- low the office of a judge. It is specially given under par- ticular acts of the legislature.

---

June.                          GREEN vs. M'CLELLAN.

To prove the lo- cation of a tract of land called *C*, a commission for marking & bound-

APPEAL from *Baltimore* County Court. This was an action for a trespass committed on a tract of land called ing that tract, and the return thereof, were offered in evidence. The commissioners certified in their return to the commission, that they had taken the depositions of witnesses, and caused a survey to be made of the land, and settled and adjusted the location thereof, and marked and bounded the same, but that after duly considering the evidence, &c. they could not agree in opinion, and therefore made no establishment or further return thereof—*Held,* that the commission and return were not evidence.

The grant of a tract of land called *M*, dated in 1776, described it as "beginning at the end of the N 200 ps. line of a tract of land called *C*, (granted in 1695,) it being the second line of said land, and running thence N E by N 44 ps." &c.—*Held,* that the beginning of *M* depends on the true location of *C*, and that such beginning must be at the place or point where the N 200 ps line of *C* terminates—— and that that termination was to be ascertained by the jury according to the evidence, and on such allowance for the variation of the compass as the jury might find to be right and proper.

That in locating *M* the jury were bound to begin at the place where they found the N 200 ps. line of *C* terminates, and could not begin at *M* the place where they might be of opinion, from the evi- dence, the taker up of that tract actually terminated the N 200 ps. line of *C*, for the purpose of fix- ing the beginning of his own tract.

OF MARYLAND.

201

*M‘Clellan's First Venture.* The general issue was plead-
ed, and plots were made under a warrant of resurvey is-
sued for that purpose.

1816.

Green
vs
M‘Clellan.

1. The plaintiff, (now appellee,) read in evidence at the
trial, the patent of *M‘Clellan's First Venture,* surveyed on
the 20th of March 1776, for, and patented to him, on the
14th of January 1809. The patent described this tract as
"beginning at the end of the N. 200 pr line of a tract of
land called *Come by Chance,* it being the second line of
said land, and running thence N. E. by N. 44 ps." He
also gave in evidence, that the said tract of land was truly
located on the plots, and that the trespasses located by him
were committed by the defendant before the bringing of
this action. The defendant then read in evidence the pa-
tent of the tract of land called *Come by Chance,* surveyed
on the 24th of November 1694 for, and granted to, *John
Richardson,* on the 10th of November 1695, for 282 acres,
and "lying on the west side of *Jones's Falls,* in *Patapsco,*
in the woods, beginning at a bounded Spanish oak standing
by the side of the falls, being a bounded tree of a parcel of
land of *Thomas Durbins,* and running thence W. N. W.
with the said *Durbins'* land called *Hab Nab at a Venture,*
260 ps. then N. 200 ps." &c. Also the patent of a tract
called *Ponteney's Chance,* surveyed on the 16th of Sep-
tember 1766, and granted to *Edward Pontany* on the 10th
of October 1775, for 45 acres—"Beginning at the end of
44 ps. on the third line of a tract of land called *Come by
Chance,* and running thence N. E. by N. 67 ps. N. 22
W. 10 ps." &c. And gave in evidence, that these tracts
were truly located by him on the plots in the cause. The
defendant then, to prove the true location of *Come by
Chance,* produced and offered to read in evidence a com-
mission taken out on the 13th of December 1802, by him,
to *mark and bound* that tract, and the return and execu-
tion of said commission, as duly returned and recorded.
By the return to the commission, the commissioners certi-
fy, that they had taken the oath, given the notice, and met
on the land the 3d of February 1803; appointed and quali-
fied a surveyor; took the depositions of witnesses, and
caused a survey to be made of the land, and settled and
adjusted the location thereof, and marked and bounded
the same; and conclude their return as follows: "We the
said commissioners do further certify, that after duly con-
sidering the evidence and circumstances relative thereto,
we cannot agree in our opinion, but divide thereon, there-
fore have made no establishment or further return thereof.
In testimony," &c. Dated 10th November 1803, and
signed and sealed by four commissioners. To the reading
of this commission and return in evidence, for the purpose
aforesaid, the plaintiff objected. And the Court, [*Nichol-
son,* Ch. J.] sustained the objection, and refused to let the
evidence be given. The defendant excepted.

1816.

Green
vs
M'Clellan.

2. The plaintiff then offered evidence to prove, that at the time when *M·Clellan's First Venture* was taken up and surveyed, the taker-up thereof, in order to ascertain its place of beginning at the end of the second line of *Come by Chance*, ran the two first lines of that tract from the place marked A on the plots, its admitted beginning, as the needle then pointed, without any allowance for the variation of the compass, and in the manner located by the plaintiff on the plots; and then prayed the court to direct the jury, that in fixing the true location of *M'Clellan's First Venture*, they are not bound to begin it at the place where they may believe the second line of *Come by Chance* terminates, according to what they may now find to be the true location of that tract, but that they may begin *M'Clellan's First Venture* at the place where they may be of opinion, from the evidence, the taker-up of that tract actually terminated the second line of *Come by Chance*, for the purpose of fixing the beginning of his said tract of *M·Clellan's First Venture*; and this direction the court gave to the jury. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued at the last term, before BUCHANAN, EARLE, and MARTIN, J. and was re argued at the present term before CHASE, Ch. J. and BUCHANAN, EARLE, JOHNSON, and MARTIN, J.

*Harper*, for the Appellant, on the *first* bill of exceptions, referred to *Shield's lessee vs. Miller*, (ante 6, 7.)

*Martin*, for the Appellee, on the *first* bill of exceptions, cited *Drane vs. Hodges*, 1 *Harr. & M·Hen.* 262. On the *second—Tenant vs. Hambleton*, 3 *Harr. & Johns.* 233. *Carroll et al. lessee vs. Norwood*, 1 *Harr. & Johns.* 186. *Shield's lessee vs. Miller*, (ante 6, 7.) *Webb's lessee vs. Beard*, 1 *Harr. & Johns.* 349. *Darnall's lessee vs. Goodwin*, *Ibid* 282    *Smith's lessee vs. Volgamot*, 2 *Harr and M'Hen.* 155. *Dougherty's lessee vs. Denny*, 3 *Harr. & M'Hen* 430. *(a.)*

(*a*) The facts of the case of *Dougherty's lessee vs. Denny*, 3 *Harr. & M·Hen.* 430, and which are not there reported, were these: On the 4th of February, 1779, *Robert Harwood* by deed conveyed to the lessor of the plaintiff, "all that part of a tract of land called *Poplar Levell*, beginning at the end of 256¼ perches, on the N. line of the said land, and running N. 63¾ perches, then W. 43 perches, then S. 30° E. 56 perches, then S. 17° E. 12 perches, then with a straight line to the beginning, containing 10 acres of land more or less." The ejectment was brought for *Poplar Levell*. Defence was taken on warrant, and by the plots it appeared that the plaintiff located *Poplar Levell*, with an allowance of 5° 45′, and the defendant located that tract with an allowance of 45 minutes only, by the depositions of witnesses in the case, it was proved in what manner that part of the tract conveyed by *Harwood* to the lessor of the plaintiff was laid off to him, which was as the needle then pointed: and the declarations of *Harwood* made at the time as to what land he had sold to *Dougherty*, were also given in evidence.

CHASE, Ch. J. delivered the opinion of the court. The court are of opinion, that the beginning of *M·Clellan's First Venture* depends on the true location of the tract of land called *Come by Chance*, which said beginning must be at the place or point where the north 200 perches line of *Come by Chance* terminates—the termination of the said line to be ascertained by the jury according to the evidence, and on such allowance for the variation of the compass as the jury may find to be right and proper; it being the exclusive right and province of the jury to decide on the proper allowance to be made for such variation according to the proof.

The court are also of opinion, that the jury were bound in locating *M·Clellan's First Venture*, to begin at the place where they found the north 200 perches line of *Come by Chance* terminated, and think the court below erred in giving the direction prayed by the plaintiff, as stated in the *second* bill of exceptions.

This court concur with that court in the opinion expressed in the *first* bill of exceptions.

JOHNSON. J. This is an action to recover for a trespass alleged to have been committed by *Green*. the appellant, on the appellee's land called *M·Clellan's First Venture*.

In the trial of this cause two exceptions were taken on the part of the defendant—The first, because the court refused to permit the land commission, offered by him, to be read to the jury; but the objection to the opinion pronounced by the court on the first exception appears to have been waved in this court.

The tract of land called *M·Clellan's First Venture*, calls to begin "at the end of the North 200 perches line of a tract of land called *Come by Chance*, it being the second line of said land."

In the trial of the cause the plaintiff offered evidence to prove "that at the time *M·Clellan's First Venture* was taken up and surveyed, the taker-up thereof, in order to ascertain its place of beginning at the end of the second line of the tract called *Come by Chance*, ran the two first lines of that tract from the place marked A on the plots, its admitted beginning, as the needle then pointed, without any allowance for the variation of the compass, and in the manner by him located on the plots in the cause; and thereupon prayed the court to direct the jury, that in fixing the true location of said tract called *M· Clellan's First Venture* they are not bound to begin at the place where they may believe that the second line of *Come by Chance* terminates, according to what they may *now* find to be *the true* location of that tract." Which direction the court gave. And the question for the consideration of this court is, Whether the opinion so pronounced was correct?

In examining this question I propose to establish three propositions—

1st. That on principles of reason and justice it is correct that the land should be located as it was when taken up.

2d. That such a location is sanctioned by general principles of law; and

3d. That no decision has been made by either the general court, or the court of appeals, conflicting with the right of making such a location; but that they have been of an opposite character.

On the first point I apprehend it must be conceded by all, that the land actually run out and designed to be purchased, should pass by the conveyance; and that if by any mistake, or inaccuracy of expression, a part should be left out, or more included, that a power ought to exist by which such errors might be corrected. For the land intended by both parties to be sold should pass by the deed or grant. If then it be correct, that the land intended to be purchased should pass by the conveyance, are there any general principles of law which will prevent the location of the land in question from being made, as it was, when run out? *M'Clellan's First Venture* was surveyed on the 20th of March 1776, and the contract *then made*, we are *now* called on to expound.

Nothing is more evident, than that every contract should depend on the *law existing* at the *time* it was made; and that the *language* in which a contract is expressed, should be construed to have the *same meaning*, as would have been given to it at the *time* it was used.

Let us examine the certificate in question by these rules. In the year 1776 the surveyor, when he run the land, was *bound* to run the anterior tract, according to the expressions of the certificate—By them he was governed; by them he was bound. If, at that *period*, an action of ejectment had been brought to recover any tract of land, containing courses and distances only, no other location would have been admitted, but such as they expressly pointed out; the least deviation from them, would have excluded the reading of the patent at the trial of the cause.

It was then not merely the *custom* to run as the needle pointed, but such was the *law* of the land; and such would *now* have been the *law*, had the legislature not thought fit to have changed it.

If then in the year 1776, the beginning of *M'Clellan's First Venture* could only be ascertained by running the two first lines of *Come by Chance* at the point of the needle, and if such would have been the rule at this day, but for a legislative interposition, our attention is *naturally* drawn to an examination of the law, by which that change has been made; and unless, by that law, we are compelled to give a location evidently different from that which was given when the land was taken up, it would seem to follow that no departure ought to be made from that survey.

But, so far from finding the legislature disposed to vary the survey, and thereby embracing within it, or excluding from it, land not originally included, we shall discover their

sole object to have been to confine the survey to the original land, and to confirm the purchaser in the *particular* land taken up by him.

By the 12th *section* of the act passed at November session 1781, *ch.* 20, which recites, "that whereas land originally included by the courses and distances, expressed in the certificate of lands heretofore granted, is now excluded by the variation of the compass, which ought not to be taken from the person claiming under such survey or grant," it is in substance enacted, that on the chancellor being satisfied as to the fact, he shall refuse a patent to any *other* person, who hath. or may survey the land, and shall give a confirmatory grant, gratuitously, to the *original* taker-up.

The courts of law, although not in words, authorized to act on the subject, have gone further than the letter of the law, grounding their decisions on its equity and spirit. The chancellor was empowered to refuse to the one, and to grant to the other, but should the same not have been brough* before him, as was the case in a variety of instances, then, except for the liberal construction, placed by the courts on this law, a junior patentee, holding land comprehended in a survey, would have retained it, notwithstanding the same was included within the lines of an ancient grant, and only excluded therefrom by the variation of the compass.

The courts of law have referred the subject to the consideration of the jury, and have left it entirely to them to determine whether there was any, and what variation; and, if they find that the land was originally included, then the elder survey and grant prevailed. Those who are conversant with the rules of the land office, know that various regulations have been made, having it for their object to confine the certificate to the land actually taken up. For that end, calls to natural visible objects were inserted; but the agents of the Lord Proprietary, discovering that by them more land was included than was paid for, adopted several schemes to prevent it, and finally that of excluding all calls, except at the place of the beginning. It was during the existence of that regulation that the present survey was made; and as it calls for no visible object, as its commencement, but only for the termination of a line of a former survey, the question is, How is this place to be found?

In examining this subject, we must constantly keep in mind, that the location of a junior tract, is not intended to affect the true legal location of a senior, for it can never be permitted, that by having erroneously located a subsequent tract, the location of a prior one is in the slightest degree affected; and although in the case before the court, the plaintiff has laid down *Come by Chance* as it was run when *M'Clellan's First Venture* was made, yet I wish it distinctly to be understood, that I do not mean, in the most remote manner, to intimate that such is the true location.

The inevitable effect of causing a tract of land taken up before the year 1781, to run to, and be governed by, the location of a tract it may call for, when each of them contain courses and distances alone, will, if the first is established with what is termed full variation, be to include in the junior survey, land not originally included, and to exclude part that was; but if one degree for variation for 20 years, will bring the respective tracts to their original location, then the commencement of the junior survey, calling for the line of an elder for its beginning, ought to be ascertained, by correcting the elder tract for that purpose, to the date of the junior survey. Nothing is more evident than that such locations will embrace the land purchased.

It is not my intention to go minutely through the cases which have been cited; for as they have all been, so far as they bear on the present question, in favour of the opinion pronounced by the court below, which opinion I consider correct, exclusive of authorities, I might here rest my judgment.

It has been considered as somewhat novel, to found the judgment of this court on a decision of the general court. This court, as every other judicial tribunal, must have some rules to regulate their decisions; and where a case for the first time is brought before them, where can they look with more propriety for the establishment of principles, applicable to the subject, than to the late general court; for my own part, I have no hesitation in declaring, that the judgment of that tribunal generally, but more *especially* on the subjects of *grants of land*, have more influence on my mind than any *English* authorities whatever. And the rules laid down by them, and acquiesced in for a length of time, must be considered as the law by which, (so far as they go,) real property has been held. I have examined the case of *Webb's lessee vs Beard*, (1 *Harr.* & *Johns.* 349,) and feel myself bound to declare, that it is not so strong to establish the principle, that a junior, calling to begin at the end of a line of an anterior survey, is not bound by the true legal location of such survey, as, I believed at the time, when *Hambleton and Tenant* was determined. Any inaccuracy which I may have made, or shall in future make, in the representation of a decision, will, as it is now, be readily acknowledged; and in the case of *Tenant and Hambleton*, it would have been a source of much regret if I believed such representation caused a different decision than otherwise would have been made. In that case the question depended on the location of a tract of land called *Neglect*—this tract called to run a certain course and distance to another tract called *Elliott's Folly, &c.* *Elliott's Folly* also had calls. The tract called *Neglect* was surveyed by the defendant in the cause, and in making such survey, he run *Elliott's Folly*, and the tracts it called for, by course and distance, and thereby, as he apprehended, ascertained the vacant land. On the trial of the cause, the tracts called for by *Neglect*, were laid

down by the defendant according to their calls, and by the plaintiff as they were laid down at the time *Neglect* was taken up. The deposition rejected by the court went to establish how they were laid down; it was rejected, on the ground of being inconsistent with the grant. But that decision was reversed.

It will be perceived, that *Neglect* calls for no visible object. I was under the impression that the *Gleanings* in the case of *Webb and Beard*, was in the same situation; and if so, the cases would have been strictly analagous. But in the latter case, though a tree is called for, and supported by some evidence, yet, my memory leads me to believe, that in that case it was determined, that if the proof as to the tree failed, that the beginning might be ascertained by running the tracts called for without their calls —on the ground, that as they contained a double description, that that description should be received, which comported with the facts, as they existed, when the junior survey was made; for, if complete evidence existed as to the tree, the patent under which the plaintiff claimed could never have been obtained, if that fact had been disclosed to the chancellor—nor, do I presume, would the counsel who conducted the case on the part of the plaintiff, ever have brought the suit, with the previous knowledge, that the tree could be established.

It is not for me to say whether those decisions ought to have any influence with this court; that is submitted to their consideration. For my own part, I have long reflected on cases of this description, and am led to think that the opinion pronounced in *Tenant & Hambleton*, is calculated to carry into effect the intention of the contract, as it existed at the time it was made; that it is consistent with, and supported by, general principles of law, more especially that it accords with the law in operation at the period it was entered into, and is in conformity with the provisions of the act of 1781, and that it is supported by the decisions which have been adjudged on the subject. I am, therefore, of opinion, that the judgment ought to be affirmed on both exceptions.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.