SIMPLER ET AL. *v.* STATE, USE OF BOYD ET AL.

[No. 203, September Term, 1960.]

458

*Decided November 11, 1960.*

The cause was argued on the motion to dismiss before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*William H. Adkins, II,* with whom was *K. Thomas Everngam* on the brief, for the appellees on the motion.

*James H. Norris, Jr., Special Assistant Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellants on the motion.

PRESCOTT, J., delivered the opinion of the Court.

There are two questions involved in this appeal: (1), Are the provisions of Code (1957), Article 5, Section 1, inapplicable to this appeal due to the fact that the Circuit Court for Caroline County, when it ordered Hooper S. Miles, Treasurer of Maryland and Custodian of the Unsatisfied Claim and Judgment Fund (Fund),[1] to pay damages to the appellees, was acting under a special, limited and summary jurisdiction?; and (2), Even if it were acting under a special and limited

---

1. The Fund was created by, and its operation is carried on under, the provisions of the Code (1957), Article 66½, Sections 150-179, both inclusive. All future references to the Code will refer to the 1957 Code and to said Article, unless otherwise specified.

jurisdiction, did the court exceed the jurisdiction conferred by Section 160, when its order required payment from the Fund of court costs and interest, in addition to the maximum amount of damages specified in Section 162?

In *Boyd v. Simpler,* 222 Md. 126, 158 A. 2d 666 (1960), this Court reversed judgments, *n. o. v.* of the Circuit Court for Caroline County, and reinstated jury verdicts in favor of the present appellees and against appellant Simpler in the total amount of $23,956.98, plus costs. The judgments so entered were based on Simpler's negligent operation of an automobile, which negligence caused the death of appellees' decedent. Simpler was uninsured, and the matter was within the provisions of the Maryland Unsatisfied Claim and Judgment Fund Law. Following the issuance of this Court's mandate, appellees, having previously complied with the provisions of Section 154, filed an application in the Circuit Court of Caroline County for payment of said judgments, plus interest and costs. The Unsatisfied Claim and Judgment Fund Board answered said application, denying any liability for interest and costs.

A hearing was held pursuant to Section 159. At this hearing, it was conceded that appellees had complied with all of the requirements of Section 159; the only contested point related to whether or not the Fund could be required to pay court costs and interest, in addition to the maximum damages of $10,000 (less $100) specified by Section 162, "on account of * * * [the] death of, one person in any one accident * * *."

As a result of the hearing, the court passed an order directing payment to the appellees from the Fund of damages in the amount of $9,900 (being the maximum amount of $10,000, less $100, as specified by Section 162), plus court costs and interest from the date of the order. The State Treasurer, as custodian of the Fund, and Simpler appealed. Thereafter, the parties entered into a stipulation, whereby the Treasurer agreed to pay unto the appellees, from the Fund, the sum of $9,900 (which has been done), the payment of costs and interest to abide the result of this appeal; consequently, the only

monetary matter presently in issue is the question of interest and costs.

The appellees have moved to dismiss the appeal on the ground that the trial court was acting pursuant to a special, limited and summary jurisdiction, and, as it is conceded that no appeal to this Court is specified in the statute, this Court is without authority to review the action of the trial court. The appellants counter by claiming that the appeal is authorized under the provisions of Code (1957), Article 5, Section 1, and, even if said Article 5, Section 1, does not authorize the appeal and the lower court was acting under a special and limited jurisdiction, this Court still has the right and duty to review the action of that court, because it *exceeded* the jurisdiction granted by the Legislature, when it ordered the payment of the interest and costs.

## I

Article 5, Section 1, is couched in broad and general terms. It provides that any party may appeal to the Court of Appeals, "from any final judgment or determination of a court of law in any civil suit or action, * * * or in any prosecution for the recovery of any penalty or fine or damages * * *." Despite this general language, which, if literally read, would seem broad enough to encompass almost every case and every question that can arise in the progress of any case, the law is well settled that in certain classes of cases no appeal to the Court of Appeals is allowed. 2 Poe, *Pleading and Practice* (5th Ed.), ¶ 826; *Johnson v. Bd. of Zoning Appeals,* 196 Md. 400, 406, 76 A. 2d 736, and Maryland cases cited therein. The general rule, as stated by Professor Poe, *op. cit.,* ¶ 826, p. 800, is that where the lower court proceeds in the exercise of its usual and general jurisdiction, an appeal will lie from any final judgment it may pronounce in a civil case. See also *Johnson v. Bd. of Zoning Appeals, supra,* 196 Md. at page 406. But to this general rule, there are certain exceptions, and one of these exceptions is that where a special or limited jurisdiction is conferred upon the circuit courts, or any of the courts of Baltimore City, to be exercised in a particular mode, and not according to the ordinary course of the com-

mon law, no appeal will lie from their judgments, unless expressly provided for by statute. Poe, *op. cit.,* ¶ 826, p. 799; 2 M. L. E., *Appeals,* ¶ 23. We must, therefore, determine whether the trial court, in this proceeding, was acting pursuant to its ordinary jurisdiction, or under a special and limited one.

In order to make this determination, it will be necessary to examine, somewhat in detail, the provisions of the statutes under which the lower court acted. After providing for the creation and maintenance of the Fund (Section 151), the creation of the Unsatisfied Claim and Judgment Fund Board (Board) to administer the Fund (Section 152), and certain procedural matters (Sections 154, 155, 156, 157), Section 158 states that when any qualified person (or his representative) recovers a valid judgment for an amount in excess of $100, exclusive of interest and costs, in any court of competent jurisdiction in this State, against any other person, who was the operator or owner of a motor vehicle, for injury to, or death of, any person or persons, or for damages to property (with exceptions), and any amount in excess of $100 remains unpaid thereon, upon the termination of all proceedings, the judgment creditors may file a verified claim in the court in which the judgment was entered and, upon ten days' notice to the Board, may apply to the court for an order directing payment out of the Fund, of the amount unpaid upon such judgment, subject to the limitations placed thereon by Section 162. Section 159 directs that the "court shall proceed upon such application, in a summary manner," and then sets forth what the applicant must show to obtain a court order as provided for in the next section. Section 160 follows by stating that the Court shall make an order directed to the Treasurer requiring him to make payment from the Fund of such sum, if any, as it shall find to be payable upon said claim, pursuant to the provisions of and in accordance with the limitations contained in "this subtitle." It is, we think, clear, from what has been said above, that the jurisdiction created by the Unsatisfied Claim and Judgment Fund Law with respect to the passing of orders for payments from the Fund is a special and limited one. The procedure outlined has little resemblance to the usual and ordinary adversary proceeding in a

civil law suit. The court is directed, under Section 159, to proceed upon the application in a "summary manner." It is certain that the jurisdiction here under consideration did not exist at common law, and that it never could have been exercised until the Legislature established the Fund and all of the machinery relating to recovery therefrom. We hold that when the trial court signed the order, which is involved in this appeal, it was not acting pursuant to its usual and ordinary jurisdiction, but was proceeding under a special, limited and summary one;[2] hence the provisions of Article 5, Section 1, do not afford the appellants a right to appeal to this Court in this case.

## II

We noted under I, *supra,* the general rule that relates to appeals to this Court, and the exception thereto that relates to cases where the lower court has acted in virtue of a special and limited jurisdiction. To this exception, there is a further exception, namely, that if the lower court has acted without any jurisdiction, or exceeded the authority conferred by statute, an appeal to the Court of Appeals will lie. *Johnson v. Bd. of Zoning Appeals, supra,* 196 Md. at page 409; *Stephens v. City of Crisfield,* 122 Md. 190, 192, 193, 89 A. 429; 2 Poe, *op. cit.,* ¶ 826, p. 800.

The appellants here do not claim that the lower court was totally *without* jurisdiction in passing the order appealed from, but claim that the court *exceeded* the statutory authority, when it allowed interest and costs in addition to the damages. Their position is based upon Section 162, which reads, in relevant part, as follows:

"(a) *Maximum amounts.*—The maximum amounts payable from the fund shall be ten thousand dollars

2. For some of the cases in which this Court decided that the jurisdiction of the lower courts was special and limited, see: Francis v. Weaver, 76 Md. 457, 468, 25 A. 413, turnpike maintenance; Jackson v. Bennett, 80 Md. 76, 30 A. 612, oyster bed appropriation; Smith v. Goldsborough, 80 Md. 49, 63, 30 A. 574, opening of roadway, appeal from County Commissioners; Warfield v. Latrobe, 46 Md. 123, 132, election contest; Shannahan v. Maulsby, 129 Md. 493, 99 A. 671, tax sales.

($10,000.00), *exclusive of interest and costs,* on account of injury to, or death of, one person in any one accident * * *." (Emphasis supplied.)

They argue that the quoted language means that recovery from the Fund is limited to an absolute maximum of $10,000 (actually $9,900 because of the deduction provision of $100 in Section 162 (b)), and that if the damages recovered by the applicant for payment from the Fund equal or exceed that maximum, then the Fund cannot be required to pay interest or costs in any amount. The statute will not bear this construction; such an interpretation would be an extremely strained and unrealistic reading of the statutory language, and deny the plain meaning of the words used. "Exclusive" is defined in Webster, *New International Dictionary* (2d Ed. Unabridged) in this manner: "5. Not taking into the account; excluding from consideration what is named;—opposed to *inclusive.*" See also *Bouvier, Law Dictionary* (3rd Ed.), p. 1110. Had the Legislature intended to say what the appellants claim it said, the statute would have read, "The maximum amount payable from the fund shall be ten thousand dollars ($10,000.00), inclusive of interest and costs * * *." This language would have expressed a clear intent to limit any recovery for damages, interest and costs from the fund to a maximum of $10,000; but the verbiage actually selected and used has precisely the contrary effect. Section 162, we think, quite plainly says that the maximum amount payable from the Fund "on account of injury to, or death of, one person" for damages shall be $10,000 (less $100), but, in computing this maximum amount of damages, interest and costs shall be excluded or not taken into account. In other words, interest and costs are payable over and above the amount of damages—there is no other explanation or reason for the insertion of the phrase "exclusive of interest and costs."

If the obvious and unmistakable meaning of the language used, as we have indicated it above, needed bolstering, it would find ample support in our own legislative exactments and in the decisions of our sister states and the federal courts. It may be noted that the Motor Vehicle Financial Responsibility Law (Sections 116-149, inclusive) deals with the same

general subject-matter as the Unsatisfied Claim and Judgment Fund Law, and the limitations on damages provided by Section 162 of the Fund Law are the same as the limits of coverage for damages required by Section 134 of the Financial Responsibility Law ($10,000—$20,000). Moreover, the policy of insurance required by Section 122.3 of the Financial Responsibility Law must have a minimum coverage of at least $10,000, "exclusive of interest and costs" in the case of bodily injury to, or death of, one person in any one accident.[3] In the case of *Bartlett v. Corliss*, 63 Me. 287, 291, the Court was called upon to construe a deed that conveyed fifty acres of land, "exclusive of water." The Court held that the quoted phrase had the same meaning as if it read, "besides the water," or "not computing the water." In *State, etc., v. Fernandez*, 21 So. 260 (La.), the Court made a ruling that under the Constitution of Louisiana, which fixed the jurisdictional limit of the city court at $100, *exclusive of interest,* such court had jurisdiction of an action to recover a license fee of $100, together with the interest at two per cent a month thereon from the time the license fee was due. Again, in *Walker v. Gibbs,* 1 Yeates, 255 (Pa.), the Court found that the word "exclusive," as used in a verdict wherein the jury found a certain

---

3. Section 131 provides that when a policy of insurance is offered as proof of financial responsibility, a copy of the form of such policy shall be filed with the Commissioner of Insurance for approval or disapproval; and, whether the form is approved or disapproved the insurance carrier shall be obligated at least to the full extent of the minimum requirements of Article 66½. The parties stipulated that a letter from the Insurance Commissioner and a specimen policy be admitted into evidence. This letter and specimen policy disclose that since the provisions of the Financial Responsibility Law became effective, The National Bureau of Casualty Underwriters, as well as independent insurers, have included in their policies "Supplementary Payments" provisions. These provisions obligate the insurance companies to pay, in addition to the applicable limits of the policy and among other items, "all costs taxed against the Insured in any such suit and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered * * * that part of the judgment" which does not exceed the limit of the company's liability thereon.

sum to be due, exclusive of a bond which was not denied, meant "over and above" the bond. See also, *Sims v. Springfield City Water Co.*, 114 F. Supp. 694 (W. D. Mo. 1953); *Athan v. Hartford Fire Ins. Co.*, 73 F. 2d 66, 67 (C. A. 2d 1934).

Furthermore, the states of New Jersey and North Dakota have Unsatisfied Claim and Judgment Fund Laws similar to that of Maryland. N.J.R.S. Cum. Supp. 1955-1958, 39: 6-69 (a); 39: 6-73 (c) (1); N. D. Rev. Code, 1957 Supp., 39-1707. The New Jersey law, in pertinent part, is nearly identical to the portion of Section 162, quoted above; the North Dakota statute differs in that $5,000 is the maximum named, and this sum is "exclusive of costs," with no mention made of interest. In *Pistoria v. Buckowski*, 134 A. 2d 830 (N. J. Super. Ct., Law Div., 1957), the applicants for payment from the New Jersey Fund had recovered judgments in excess of $10,000. No question was raised concerning court costs, and the case was tried upon an assumption or *concessum* that some interest was payable from the Fund in addition to the statutory maximum of $10,000. The sole question involved was whether the interest should be computed on the aggregate amount of the judgments or on the maximum amount payable from the Fund. The court held that interest was allowable only on the latter amount. In the later case of *Lindsay v. Boles*, 161 A. 2d 324 (N. J. Sup. Ct., Law Div., 1960), no question was raised as to the applicant's right to the payment, from the Fund, of the principal amount of his judgment and costs, the total amount of which was less than the $10,000 maximum. The issue presented was whether the applicant was entitled to compel the Fund to pay her interest accrued on her judgment between the date it was entered and the date application was made to the court for an order compelling the Fund to pay the judgment. During the course of its opinion, the court stated, "the fact that the Fund may pay $10,000, exclusive of interest and costs, is a legislative recognition of the fact that the Fund may be required to pay interest in addition to the $10,000 maximum or the other applicable maximums, as the case may be," and then held that interest was payable only from the date specified for payment in the order

directing the Treasurer to make payment from the Fund. In *Rall v. Schmidt*, 104 N. W. 2d 305 (N. D. 1960), the Supreme Court of North Dakota construed its statute, which we have outlined above, as permitting recovery up to the "full limit of $5,000, plus costs [4] * * *." Cf. *Provincial Secretary-Treasurer v. York*, 16 D. L. R. 2d 198 (N. B. S. Ct., App. Div., 1959).

We hold that the plain meaning of the language used in the statute and precedent unite to show that Section 162 gave the Circuit Court jurisdiction to order payment from the Fund of the statutory maximum of damages plus court costs, and interest thereon from the date of the trial court's order. As the order passed was within that jurisdiction and since that jurisdiction was special, limited and summary, with no appeal provided by statute, the appeal must be dismissed.

> *Appeal dismissed, the appellants*
> *to pay the costs.*

---

4. New York has a "Motor Vehicle Accident Indemnification Corporation Law," similar to the Maryland statute here involved. See 5 Consol. Laws Service (N. Y.), 1960 Supp., Insurance Law, Art. 17A. Sections 600-626, inclusive. The briefs do not refer us to, nor have we found, any case where the New York Courts have dealt with the precise questions here considered.