## MONTCHESTER GUN CLUB, INC. *v.* HONGA RIVER GUN CLUB, INC.

[No. 184, September Term, 1969.]

*Decided February 16, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Henry J. Noyes* for appellant.

*W. Edgar Porter,* with whom was *George H. White* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

Having abjured trial by combat for trial by law, two Eastern Shore gun clubs have called upon the Maryland courts to settle a boundary dispute between them. So enamored are they of legal rather than ballistic processes they have resorted to an antique 1786 statute which is now seldom used and has not been considered by this Court for over one hundred and fifty years. Chapter 33 of the Acts of 1786, now codified as Article 15 of the Maryland Code (1957, 1968 Repl. Vol.) provides that the circuit court may appoint a commission to mark and bound lands, the boundaries of which have been lost or confused.[1] The commission, which may be composed of three to five persons skilled in land affairs, must give notice thirty days before they meet. They may order a survey taken and are empowered to take the depositions of witnesses who have knowledge of the boundaries. If a majority of the commissioners concur they are authorized to mark the lines of the lands and must return a plat and certificate of the boundaries to the court which issued the appointment. The court in turn, unless it otherwise orders on the ground of misconduct by the commissioners, must receive and enroll the return. If the return is unchallenged in a suit or action commenced within five years after it is received, it becomes conclusive evidence

---

1. This procedure is not to be confused with proceedings before the Land Office Commissioner formerly authorized by the Maryland Constitution but abolished by constitutional amendment in 1966, nor the proceedings to appoint commissioners to perpetuate boundaries of lands authorized by Code (1957, 1965 Repl. Vol.), Art. 35, §§ 27-30.

of the original location of the boundaries, although a later challenge is permissible for persons under disability. Each commissioner is entitled to the per diem expense of two dollars, although a surveyor is allowed compensation up to four dollars per day. Under Sections 16 and 17 of Article 15, which were repealed in 1965 (to eliminate any possible conflict with the Maryland Uniform Arbitration Act enacted in that year (Code (1957, 1968 Repl. Vol.) Art. 7), no commission could vary from lines settled, agreed or ascertained by the parties.

This procedure had its origin in Maryland with legislation enacted in 1699. Much of the early litigation in the colony involved boundary disputes and legislation of this type was an effort to encourage private settlement of these disputes. It was thought this end could best be accomplished by conducting hearings in the immediate area of the contested lands where knowledge of local residents would be available. The early legislative enactments expired by their own terms in a few years. The expiration date, however, was followed by reenactment until Chapter 33 of the Acts of 1786. This later act was devoid of any expiration date and has remained unchanged to this date except for minor amendments made shortly after the original enactment and the repeal of Sections 16 and 17.

The parties here own large tracts of adjoining marshland, presumably lush with wild geese and other live targets, and their common boundary is now in dispute. The appellee, Honga River Gun Club, Inc., determined to assert its claimed holdings, filed on August 9, 1965, an application in the Circuit Court for Dorchester County for a commission to fix its boundaries.

Appellant, Montchester Gun Club, Inc., vehemently and immediately objected to the proceedings and filed a petition claiming that the statute was obsolete in and of itself, and that under Sections 16 and 17 of Article 15 (then in effect) its use was prohibited in this case in view of a 1947 deed which it claimed settled the dispute. Judge Mace sustained a demurrer to this petition and

appointed a commission pursuant to Section 6 of the statute. The Commission, composed of three men, took testimony regarding the boundaries and consulted with a surveyor. Their return was handed to the Clerk of the Circuit Court for Dorchester County on November 29, 1966, awarding the disputed area to Honga. Again Montchester protested and sought to call the Commission's findings into question in two ways. First, on April 23, 1968, it instituted a separate suit in trespass and ejectment against Honga, and, second, on April 10, 1969, it filed as a part of the Land Commission proceedings a motion to strike the return of the Commission.

The motion to strike alleged fraud and irregularity by the Commissioners for representing that a survey had been made when in fact none had, but Judge Mace refused to consider the question; instead, he granted Honga's motion *ne recipiatur*, in effect striking the motion to strike.[2] This was done on the grounds that the only remedy provided by the statute for challenging the Commission's findings was to be found in Section 15, which provides:

> "If no *suit or action* shall be brought within five years next after recording the return of the commissioners, to call in question their adjudication, the marking and bounding such land as aforesaid, and the record thereof shall be conclusive evidence of the original location thereof both as to the direction and termination of the lines; or if the adjudication of the commissioners shall be confirmed by the verdict of a jury in any such suit, the adjudication of the commissioners in the point confirmed by the jury, and between the same parties and those claiming under them, shall conclude to every intent and purpose; provided, that every infant,

---

2. For a discussion of the function of these two motions, see Millison v. Citizens National Bank of Southern Maryland, 256 Md. 431, 260 A.2d 324 (1970).

married woman, insane person, or person in prison and beyond sea, and those claiming under either of them, shall have five years after the disability [is] removed to commence such suit or action." (Emphasis added.)

Judge Mace ruled that under this section the Commissioners' return can be questioned on the basis of irregularity only in the independent trespass and ejectment case. He further concluded that an attack must be aimed at the findings of the return rather than its form if the attack is made in the same proceedings as those appointing the commission.

The subject of this appeal is the correctness of that ruling. We were informed in the oral argument that the trespass-ejectment action is being held in abeyance until we render a decision on how the return can be challenged.

Before discussing this ruling it will be necessary to dispose of appellee's motion to dismiss. By its motion it contends that this is an administrative proceeding with appeals governed by Subtitle B, Chapter 1100 of the Maryland Rules. It has further been suggested that the Article 15 proceeding might be a special statutory proceeding. Thus it is argued, under the decisions of this Court, no right of appeal exists under Code (1957, 1968 Repl. Vol.), Article 5, Section 1, and in the absence of a right granted by the statute creating the proceeding, no appeal lies. *Simpler v. State, Use of Boyd,* 223 Md. 456, 165 A. 2d 464 (1960).

We determine this is clearly not the proceeding of an administrative agency and if it is anything other than a usual action at common law it is a special statutory proceeding. 11 C.J.S. *Boundaries,* Section 88 g (1938).

At first blush Article 15 would seem to provide for a special statutory action. However, this may well be a regular exercise of the court's general jurisdiction in the ordinary course of the common law, from which an appeal would normally lie under Article 5, Section 1. *Simp-*

*ler, supra;* Poe, 2 *Pleading and Practice,* Section 826 (5th ed.). A review of the 18th and 19th century English cases involving the appointment of boundary commissions indicates that Article 15 and its predecessors, which go back as far as 1699, were but regularizations of a common law bill in equity. Daniell, 2 *Pleading and Practice in the High Court of Chancery* (6th American Ed. Perkins, Cooper, Gould 1894) ; *Chapman v. Spencer,* Y.B. Mich. 5 Geo. 2 [Ch. 1731], MS Rep., 2 Eq. Ca. Abr. 163, 22 Eng. Rep. 139 ; *Speer v. Crawter,* 2 Mer. 410, 417-18 [Ch. 1817], 35 Eng. Rep. 997, 999 ; *Godfrey v. Litell,* Taml. 221 [Rolls Ct. 1829], 48 Eng. Rep. 88 and cases cited therein.

In the posture that the matter is before us it is unnecessary for us to answer this technical question. It is the law of this State that a limited right of appeal exists from the trial court's refusal to consider a question when directed to do so by the statute. *Simpler, supra,* and *Wash., B. & A. R. Co. v. Kimmey,* 141 Md. 243, 251, 118 A. 648 (1922), where an appeal was allowed from a usually non-appealable refusal to permit a new trial on the grounds that the court refused to consider the question at all.

While we believe the learned trial judge was correct in ruling that the admissibility of the Commission's return can be questioned on the issue of irregularity at the trial of the trespass-ejectment case, a "suit or action" filed within five years of the return as provided in Section 15, we conclude it may also be attacked for formal deficiencies in the Land Commission proceedings. We are constrained to point out that the trial judge has overlooked the clear provision of Section 14 which directs that the ". . . return shall be received and recorded in the record of land commissions and returns of such court, *unless the court shall otherwise order because of the misconduct of the commissioners."* (Emphasis added.)

Under English chancery practice a similar narrow challenge was permissible, distinguished from an action

which called into question the correctness of the findings. Tyler, *Law of Boundaries and Fences*, 253-54 (1874). Daniell in 2 *Pleading and Practice in the High Court of Chancery* (6th American Ed. Perkins, Cooper, Gould 1894) at 1164, points. out that a "commission to settle boundaries . . . is objected to, confirmed, or quashed in the same manner ; . . as a commission of partition." Thus, when a Commission to Partition is returned "if any grounds exist for objection to the certificate such as irregularity in its execution, or misconduct, or partiality on the part of the commissioners, a special motion must be made on notice, and supported by affidavits, to quash or suppress the certificate." *Ibid.* 1160.

While Montchester utilized a motion to strike without affidavits in this case we will not be so hypertechnical as to rely on an obscure cross-reference in a 19th century legal treatise to say that it had not effectively challenged the return under Section 14 of the statute. The motion alleged misconduct and Judge Mace should have entertained and ruled on it since we conclude that any attacks on the Commission's return claiming failure to follow the formal requirements of Article 15 are allegations of "misconduct of the commissioners."

Deciding then that in a limited manner this case is properly before us on appeal and that the action of the trial judge in granting the motion *ne . recipiatur* should be reversed, we deem it appropriate as authorized by Rule 885 to express our opinion on some of the problems which will confront the trial court either on remand of this case or the trial of the trespass-ejectment case. We are inclined to do so in an effort to clarify obscurities of ancient legal practices.

If the motion to strike the Commissioners' return is pursued, and the court finds "misconduct of the commissioners," the return should not be received. This determination would be *res judicata* as to the inadmissibility of that particular return in any later boundary action between the parties; however either party is free to seek

appointment of a new commission in an effort to produce a return that will withstand procedural attack. If the motion to strike is denied, the return will be admissible in a subsequent suit but the substantive conclusions of the Commissioners would still be open to challenge if the suit were brought within five years of the recording of the return.

Because the return has significance almost entirely as evidence in later proceedings, the better practice would seem to be to resolve all questions concerning its validity in those proceedings. In the absence of any final determination under Section 14, the same grounds of attack could be posed at the trial. This would be done by objection to the offering of the return in evidence. If it were necessary to take testimony to determine the validity of such an objection, this could be done out of the presence of the jury, at the discretion of the trial judge. Obviously if objection to the return is sustained, the party offering it would be required to prove his case by other independent evidence. *Weems v. Disney,* 4 H. & McH. 156 (1798); *Ruff v. Webster,* 4 H. & McH. 499 (1767); *Green v. M'Clellan,* 4 H. & J. 200. On the other hand if the commission was conducted regularly and in compliance with Article 15, the return as well as any other proper accompanying documents should be received in evidence "to go to the jury to have what weight the jury might think it deserved", *Lowes v. Holbrook,* 1 H. & J. 153 (1801). In reaching its conclusion the jury should consider this and all other relevant evidence. At an appropriate time there should be an instruction that since five years have not elapsed without the return being questioned by the institution of a suit or action under Article 15, it is not conclusive. Obversely, if the return has been received and five years have elapsed without proper challenge, the return would be conclusive evidence in any action as provided by Section 15 (except in cases of disability).

With the conclusion that Judge Mace was incorrect in not permitting an attack upon the Commissioners' re-

turn through the use of a motion to strike, we reverse his action and remand the case for further proceedings.

> *Orders of court reversed and case remanded for further proceedings. Costs to be paid by appellee.*