# HONGA RIVER GUN CLUB, INCORPORATED *v.* MONTCHESTER GUN CLUB, INC.

[No. 163, September Term, 1973.]

*Decided March 8, 1974.*

The cause was argued before MOYLAN, POWERS and MOORE, JJ.

*Paul M. Anderton* for appellant.

*Henry J. Noyes* for appellee.

POWERS, J., delivered the opinion of the Court.

As noted by Judge Digges for the Court of Appeals in *Montchester Gun Club, Inc. v. Honga River Gun Club, Inc.,* 257 Md. 79, 262 A. 2d 312 (1970), this case involves a long standing boundary dispute between two Eastern Shore gun clubs which own large tracts of adjoining marshland, presumably lush with wild geese and other live targets.

The question presented to the Court of Appeals in *Montchester v. Honga River, supra,* was not determinative of the ultimate dispute. Honga had invoked an ancient and seldom used law, Code, Art. 15,[1] by applying to the Circuit

---

1. Article 15 has been repealed, effective 1 January 1973. Disputed or missing boundary lines may now be established or located by a court under Code, Art. 21, § 14-111.

Court for Dorchester County to appoint a commission to fix its boundaries. The case was docketed as Civil Law No. 2280, and over objection by Montchester, the court appointed a commission, which proceeded to file a return awarding the disputed area to Honga. Montchester questioned the return by filing a separate suit at law in trespass and ejectment against Honga, Civil Law No. 2675, and by moving to strike the return. The trial judge declined to consider the question of striking the return, on the ground that the only proper challenge to such a return was by a separate suit or action.

Holding that the return was subject to attack for misconduct of the commissioners the Court of Appeals reversed the orders of the lower court in No. 2280, and remanded the case for further proceedings. It said, at 86-87:

> "Deciding then that in a limited manner this case is properly before us on appeal and that the action of the trial judge in granting the motion *ne recipiatur* should be reversed, we deem it appropriate as authorized by Rule 885 to express our opinion on some of the problems which will confront the trial court either on remand of this case or the trial of the trespass-ejectment case. We are inclined to do so in an effort to clarify obscurities of ancient legal practices.
>
> If the motion to strike the Commissioners' return is pursued, and the court finds 'misconduct of the commissioners,' the return should not be received. This determination would be *res judicata* as to the inadmissibility of that particular return in any later boundary action between the parties; however either party is free to seek appointment of a new commission in an effort to produce a return that will withstand procedural attack. If the motion to strike is denied, the return will be admissible in a subsequent suit but the substantive conclusions of the Commissioners would still be open to challenge if the suit were brought within five years of the recording of the return.
>
> Because the return has significance almost

entirely as evidence in later proceedings, the better practice would seem to be to resolve all questions concerning its validity in those proceedings. In the absence of any final determination under Section 14, the same grounds of attack could be posed at the trial. This would be done by objection to the offering of the return in evidence. If it were necessary to take testimony to determine the validity of such an objection, this could be done out of the presence of the jury, at the discretion of the trial judge. Obviously if objection to the return is sustained, the party offering it would be required to prove his case by other independent evidence. *Weems v. Disney*, 4 H. & McH. 156 (1798); *Ruff v. Webster*, 4 H. & McH. 499 (1767); *Green v. M'Clellan*, 4 H. & J. 200. On the other hand if the commission was conducted regularly and in compliance with Article 15, the return as well as any other proper accompanying documents should be received in evidence 'to go to the jury to have what weight the jury might think it deserved', *Lowes v. Holbrook*, 1 H. & J. 153 (1801). In reaching its conclusion the jury should consider this and all other relevant evidence. At an appropriate time there should be an instruction that since five years have not elapsed without the return being questioned by the institution of a suit or action under Article 15, it is not conclusive."

The appeal now before us is from the judgment of the Circuit Court for Dorchester County in No. 2675, the law case initiated by Montchester's declaration in two counts against Honga, alleging its ownership and possession of certain land, described in the declaration, and that Honga trespassed upon it and ejected Montchester from it. Montchester also prayed for an injunction. Honga pleaded the general issue to each count of the declaration, denied Montchester's ownership of the land it claimed to own, and denied that it had trespassed upon or wrongfully ejected Montchester from any lands owned or possessed by Montchester.

Honga filed a counterclaim against Montchester in two counts paralleling Montchester's declaration, alleging trespass and ejectment, describing the lands owned by it by reference to the return filed by the Commissioners in No. 2280. Montchester pleaded the general issue to each count of Honga's counterclaim.

The parties thus chose the traditional course to isolate for resolution by a jury the single issue between them: the true location of their common boundary line. Poe, *Pleading and Practice*, Tiffany's Edition, Vol. 2, discusses ejectment in § 469, where he says:

> "The action of ejectment may be of two kinds: It may involve simply the question of title to a piece of land, in regard to the location and boundaries of which there is no dispute, or the contention may be whether the land in controversy, truly surveyed and located, is within the lines of the plaintiff's or defendant's title papers. In the one case it is called ejectment upon title; in the other, ejectment upon location. * * * Where, on the other hand, a testator devises Blackacre to his son B, and Whiteacre to his son C, the two tracts being contiguous, and a controversy arises between the two devisees as to the boundaries of their respective tracts, and ejectment is brought by B to recover from C a strip of land claimed by B to be within the lines of Blackacre, truly located, but actually in possession of C — here, manifestly, the litigation can only be settled by means of a survey running the lines of the two tracts, and locating the conflicting pretensions of the parties upon plats. This, therefore, is an example of ejectment upon location."

When a plaintiff is able to allege and prove actual possession he may choose, alternatively or additionally, the action of trespass to try his title. Poe, *Pleading and Practice*, Tiffany's Edition, Vol. 1, says of trespass in § 244:

> "The action is frequently resorted to for the

> purpose of trying a disputed question of title to land, as in the case of Ridgely v. Bond, in which it is declared, upon the authority of Norwood v. Shipley, that to maintain it, the plaintiff must either show title to the land on which the trespass was committed, or that he was in actual possession thereof at the time of the trespass. * * * Indeed, the action is an obviously proper one to determine the divisional lines of adjacent land owners, where each of the parties claims title and possession of the land in dispute."

Maryland Rule T42 b. restates the rule that a plea of not guilty in ejectment confesses the possession and the ejectment, and puts in issue only the title and right to possession of the land, and the amount of damages.

In June of 1969 Montchester filed a motion for a separate trial, under Maryland Rule 502, of the issue of law as to the admissibility in evidence of the Return of Land Commissioners filed in No. 2280. The separate trial was held, and the court ruled that the Return, with proper accompanying documents, be received in evidence at the trial of the case.

Trial was held before a jury in the Circuit Court for Dorchester County beginning 11 December 1972. On 13 December the jury returned a verdict in favor of Montchester, and assessed damages at one cent. After denying a motion for a new trial the court, on 17 January 1973, entered final judgment on the verdict, and entered an order permanently enjoining Honga and others from entering upon the lands of Montchester.

Honga filed a timely order for appeal from the judgment. Here it contends that the court erred in denying its "additional motion", its motion for a directed verdict, and its motion for a new trial. It also asserts that the court erred in permitting Montchester to offer evidence tending to impeach the credibility of a witness who had been called by each side.

The only evidence material to the issue being tried in the case was evidence tending to show the location of the line

dividing the property of the parties. Montchester offered in evidence a certified copy of a deed recorded among the land records of Dorchester County in 1947, between Honga River Gun Club, Incorporated and Robert L. Simmons and wife. Simmons was a predecessor of Montchester's grantor. The deed was admitted, without objection. We quote a portion of it:

> "WITNESSETH, that Whereas, the said Robert L. Simmons and the said, the Honga River Gun Club, Incorporated own certain lands in Lakes or the 5th Election District of Dorchester County, State of Maryland, and they wish to establish and fix a line of division between their adjoining lands, for which purpose these presents are executed. NOW, THEREFORE, THIS DEED WITNESSETH, that the said Robert L. Simmons, on the one part and the said, the Honga River Gun Club, Incorporated on the other part, do hereby fix and establish as the line of division between their said adjoining lands, the following line, to wit: The first line in the patent for 'Kirwan's Adventure', recorded in Patent Record C. G. No. 6, folio 173 of the Patent Records in the Office of the Land Commissioner at Annapolis, Maryland, which line, as the line of division hereof begins at a point on the waters of Honga River and on the East side of said river at what is referred to as being identified by a locust post marked with twelve notches in the year 1802 and from the said beginning, the said line, adopted hereby as a line of division, runs North 54 degrees 45 minutes East until said line intersects the Western boundary of the tract of land called 'Tyler's Desire', which was patented to Planner A. Tyler and others, September 20, 1920, which patent is recorded among the said Patent Records in Liber J. S. S. No. 1, folio 249, and all the land Northward of the said North 54 degrees 45 minutes East line and to the Westward of the Westward lines of 'Tyler's Desire' and Eastward of

the Eastward lines of the land conveyed to the said Robert L. Simmons from William C. Edgar, by deed dated September 28, 1929, and recorded among the Land Records of Dorchester County, Maryland, in Liber J. F. D. No. 24, folio 510, is hereby granted and conveyed, quit claimed, renounced and surrendered to the said Robert L. Simmons, his heirs and assigns, in fee simple, by the said, the Honga River Gun Club, Incorporated, and all the land to the Southward of the said North 54 degrees 45 minutes East line of 'Kirwan's Adventure' and all that part of 'Tyler's Desire' lying South and West of Hell Hook Gut and ditch forming North source of this Gut and West of World's End Creek and all the land Westward from the Western line or lines of the said land conveyed to the said William C. Edgar by Robert L. Simmons and wife, in the aforesaid deed dated September 28, 1929, and recorded among said Land Records in Liber J. F. D. No. 24, folio 510, which deed as a fixing of the said line, is hereby granted, conveyed, quit claimed, renounced and surrendered to the said, the Honga River Gun Club, Incorporated, its successors and assigns, in fee simple, by the said Robert L. Simmons and Mina J. Simmons, his wife."

William E. Doeller, who signed the 1947 deed as president of Honga, testified at the trial. He said he and his family have owned Honga since they acquired it in 1946, and he is still its president. He said he recalled a "line agreement" in 1947 with Mr. and Mrs. Simmons. He was asked whether it related to the settlement of a patent fight, and said:

"There was no patent fight. We wanted to establish a line between the northeastern part of the Honga River Gun Club and the Simmons land, where it touched on the Honga River Gun Club."

\* \* \*

"It is a perfectly simple agreement. He just

finally subscribed to the idea and I subscribed to the idea. It was surveyed for us, and that is it."

Russell M. Herbert, a registered surveyor in the State of Maryland, was called by Montchester. He said that in 1963 he worked for about six months on a survey for Mr. Philip Gootee, who was Montchester's immediate grantor. He looked at land records, and the records of several land patents in Annapolis. He undertook to locate on the ground the north 54 degrees 45 minutes east line of division referred to in the 1947 deed of Honga and Simmons. He said that he did in fact locate that line of division on the ground. His work sheets and plats showing the line were received in evidence. From his survey, Mr. Herbert prepared the description for the deed from Gootee to Montchester.

The Return of the Land Commissioners, filed in No. 2280, was offered in evidence by Honga, and was admitted. Davis Clark Kirby, Jr., a graduate engineer and registered land surveyor, was called as a witness by Honga. He said that he had examined the 1947 line deed between Honga River Gun Club and Simmons to interpret it for the Commissioners (in No. 2280). He testified:

"I told the Commission that I couldn't establish exactly where that north 54 degree 45 minute line is, because I didn't have any boundaries to work from. However, I plotted the Tyler Desire description and fitted it on the shoreline, and I advised the Commission that although I couldn't establish it exactly, I could establish the area in which it was. I wouldn't quarrel too much with where it had been marked by, I believe, Mr. Herbert. However, I told them that I couldn't establish it exactly, but if I were asked to establish it as close as I could, I would put it a little further south than Mr. Herbert. But, that was only one part of this agreement.

Now, to the west line of Tyler's Desire, there again, I think it would be impossible for anybody to reestablish Tyler's Desire in the exact position it

was when it was originally surveyed. However, there are marks on the ground that I can't quarrel too much with, and they are roughly in the correct position, I believe. So, that, apparently, gets two lines established north of the north 54-45 east line, and west of the west line of Tyler's Desire.

Then it goes on, eastward of the eastward line, the land conveyed to Robert L. Simmons from William C. Edgar, by deed dated September 28, 1929, recorded in the Land Records of Dorchester County, Liber J. S. D No. 24, folio 510. Now, that establishes the west line of this property. There they lose me and I can't follow what they intended by that last sentence."

Honga read into evidence a transcript of testimony given by Lawrence F. Simmons, a land surveyor, before the Land Commissioners in 1965. In that testimony Mr. Simmons referred to numerous deeds involving various parties and various parcels and tracts of land in the general area. He was asked if he had seen the 1947 deed between Honga and Simmons (not related) and if it had been possible for him to make an accurate survey and location of the 54 degree 45 minute east line in that deed. He replied that he had always refused because it wasn't possible to do it correctly. He said that he had never tried to locate it and never would try.

Each side presented evidence which tended to show alleged encroachments by the other upon the land in dispute. Montchester called Delmas Travers, who has been head caretaker and head guide of the Honga River Gun Club since 1946. He was asked questions showing the existence over the years of disputes concerning duck blinds, muskrat traps, bulldozing a road, posting and removal of no trespassing signs, and where, with relation to those incidents, he understood the division line to be. Honga later called Mr. Travers as a witness for the defendant. He testified extensively, describing various parcels and tracts of land, ownerships, natural boundaries, and landmarks in the general area. He testified concerning a stone that Mr.

Herbert had found under water and had accepted as a marker stone, indicating that it was not a genuine marker stone, but had been recently placed there.

After Honga closed, Montchester called a rebuttal witness who testified that he knew the reputation of Mr. Travers in the community for truth and good order, and that it was bad. Honga's counsel objected, saying, "We haven't gone into truth or lack of it with any witness, and I object to it about this witness." The court overruled the objection. Honga argues here that in originally calling Travers as its witness, Montchester vouched for his credibility throughout the trial, and could not be permitted to attack his credibility. That was not the ground upon which the objection was made below. Maryland Rule 522. However, considering the nature of the corporate activity of Honga River Gun Club, Incorporated, we think that Mr. Travers, as its head caretaker and head guide, was its managing agent within the meaning of Code, Art. 35, § 9, and could be impeached as if called by the adverse party. There was no reversible error in the ruling of the court.

At the close of all the evidence the transcript shows that there was a bench conference, after which the court said:

> "Madam Clerk, appropriate motions were filed at the conclusion of the Plaintiff's case and at the conclusion of the whole case by both parties, and all of those motions were denied."

Honga contends that the court erred in overruling its "additional motion". The "additional motion" appears to have been a pretrial motion asking the court to take judicial notice of a series of documents, and in addition to rule that the 1947 deed between Honga and Simmons was ambiguous and did not show what the parties to it intended. The judge denied that motion, saying that he would rule on the admissibility and effect of each document at the trial. Honga offered some 26 exhibits. All were admitted in evidence. The 1947 deed was offered by Montchester, and admitted without objection. There was no error in denying the pretrial motion.

Honga presumably relies upon its "appropriate motion" at the close of all the evidence to permit it to contend here that the 1947 deed establishing the division line was void for uncertainty, and that the court could not construe the deed to carry out the intent of the parties. No such contention was made at the trial below, and any attempt to make it would have been utterly without support in the record. If we assume that Honga's "appropriate motion" was a motion for a directed verdict, the record contains no statement of grounds. Maryland Rule 552 (a). There is nothing before us on the point. Maryland Rule 1085.

Lastly Honga contends that the court erred in denying its motion for a new trial. The motion suggested nothing by way of any material newly discovered evidence. It asserted numerous errors by the trial judge in the course of the proceedings, but Honga was free to assert those alleged errors on appeal. Whether to grant the motion for a new trial was in the discretion of the trial judge. *Kirkpatrick v. Zimmerman*, 257 Md. 215, 262 A. 2d 531 (1970). We find no abuse of that discretion.

*Judgment affirmed.*
*Appellant to pay costs.*